State *v.* Gorham.

STATE OF MAINE *versus* INHABITANTS OF GORHAM.

The provisions of the common law and of the statute of 22 Henry VIII, as to the parties required to keep in repair highways and bridges, have been superseded by R. S., c. 25, § 57.

Since the enactment of that statute, the obligation of towns to keep in proper repair their highways and bridges, is absolute and unqualified; and for neglect of this duty, they are liable to *indictment.*

By § 16, c. 81, R. S., every rail road corporation shall maintain and keep in repair all bridges, with their abutments, which such corporation shall construct for the purpose of enabling their road to pass over or under any turnpike, road, canal, highway or other way.

Structures for the passage of travelers, erected over a rail road where it crosses an established highway, fall under the designation of bridges, as that term is used in our statutes.

For the want of proper repair of *such bridges and their abutments,* so constructed by a rail road company, being a part of the *highway* which the *town* is bound to maintain, they are liable to an indictment.

But towns may compel the party bound to maintain such bridges, to make any reasonable repairs, by the writ of *mandamus,* or if they have been obliged to make expenditures thereon, may reimburse themselves by an action on the *case.*

ON FACTS AGREED.

INDICTMENT.

The York and Cumberland Rail Road Company, in pursuance of their charter, laid out and built their road across one of the highways which the defendants were bound to keep in repair.

Over their rail road, the company built a bridge, where the highway formerly was, with abutments.

The indictment was for the neglect of defendants in keeping this bridge and abutments in a fit state of repair.

If the Court shall be of opinion, that the indictment will lie, the case is to stand for trial, otherwise a *nolle prosequi* is to be entered.

*J. Pierce, jr.,* for defendants.

This indictment ought not to be sustained:—

1. Because the York & Cumberland Rail Road Co., are bound to keep in repair the bridge complained of, and are liable to prosecution for any public or private injuries caus-

ed by its want of repair. R. S., c. 81, § § 16, 24; Act of incorporation of said company, § § 1, .8, 9; *Inhabitants of Cambridge & Somerville* v. *The Charlestown Branch R. R. Co.,* 7 Metc. 70; Bacon's Abr., ("Indictment,") vol. 3, p. 549; 1 Hawkins' P. C. 210; 4 Black. Com. 218; *The Queen* v. *Birmingham & Gloucester R. R. Co.,* 9 Carr. & Payne, 469.

2. Because the defendants are not bound to keep said bridge in repair. That duty is imposed upon the Rail Road Co. English statute on repair of bridges, 22 Hen. VIII, c. 5; Coke's 2d Inst. pp. 700, 701; Dane's Abr. c. 79, art. 11, § 12; Mass. stat., March 5, 1787, on repairs of highways & bridges; Stat. of Maine, 1821, c. 118; R. S., c. 25, § 57; Magna Charta, (9 Hen. III.,) c. 15; Russell on Crimes, c. 30, § 4; *Case on repair of bridges,* 13 Coke, 33; *The Queen* v. *Sir John Bucknall,* 2 Lord Raymond, 804; *The Queen* v. *Inhabitants of the county of Wilts,* 1 Salk. 359 and 358; ‚*Case of Langfort Bridge,* Cro. Car. 365; *Howe* v. *Starkweather,* 17 Mass. 240; *Norwich* v. *Commissioners, &c.,* 13 Pick. 60; *Inhabitants of Webster* v. *Larned,* 6 Metc. 522.

But even without the Act making it the duty of the rail road company, there is no liability imposed on the town by statute or by common law, to keep this bridge in repair, it being, (I.) not a bridge, but a viaduct : —

It being, (II.) not a bridge properly part of the highway, either by location, prescription, or voluntary adoption ; — nor such a bridge as is intended in the statute connexion, or as existed at the time of framing the 57th § of c. 25 of the Revised Statutes ;' — and not a bridge of utility to the highway, but solely of advantage to the rail road company. *Parker* v. *Boston and Maine Rail Road Co.* 3 Cush. 108; *Todd* v. *Rome,* 2 Greenl. 55; *Rowell* v. *Montville,* 4 Greenl. 270; *Estes* v. *Troy,* 5 Greenl. 368; *The State* v. *Strong,* 25 Maine, 297; Rolle's Abr. p. 368, pl. 2; *Perley* v. *Chandler,* 6 Mass. 453; *The King* v. *Inhabitants of West Riding of Yorkshire,* 5 Burr. 2594; *Same* v. *Kerrison,* 3 M. & S. 526; Broom's Law Maxims, p. 554, — " *Qui sentit commo-*

*dum sentire debet et onus.* *Dygert* v. *Schenck*, 23 Wend. 446; *Sawyer* v. *The Inhabitants of Northfield*, 7 Cush. 496, 497, 498; *The King* v. *Corp. of Stratford on Avon*, 14 East, 343.

*Evans, Attorney General,* for the State, contended, that but little light could be shed on our statute in relation to highways, by the decisions of England or of other States. What have the statutes of England in relation to bridges to do with it? None of them, either ancient or modern, can possibly aid in the decision of this question. This is not a *bridge,* it is a *highway.* We have no obligation to build bridges, only as a part of highways. All of the defendants' illustrations were from cases not pertaining to highways. The late case, cited from New York, was not in relation to a highway. Where an individual builds a bridge over a highway, it is for his own accommodation. This bridge was not built for the rail road accommodation, but for the public. Their tract did not require it.

The law referred to by the defendants, is no doubt good, but it has no application to this case.

The decisions in Massachusetts are made under a different statute. There is a condition in their statute which is not found in ours. The obligation on the part of the rail road to keep in repair such bridges, is there held to be such "other provision" as is required by their law.

Here the statute obligation upon towns, to keep their highways in repair, is absolute, and for such expenses and damages as they incur at rail road crossings, the company is responsible to them.

RICE, J. — This is an indictment for a defective highway and bridge, situated in the town of Gorham, and is based upon the provisions of § 57, c. 25, R. S.

Section 16, of c. 81, R. S., provides, that "every rail road corporation shall maintain and keep in repair, all bridges, with their abutments, which said corporation shall construct, for the purpose of enabling their road to pass over or under any turnpike road, canal, highway, or other way."

This provision it is contended, to that extent exonerates towns from the general liability for defects in the highways within their limits, imposed upon them by the provisions of § 57, c. 25, and that, for that reason, the defendants are not liable in this prosecution.

This presents a question of much importance, both to towns and to the public generally. By the introduction of rail roads into our State, and from the mode in which they are necessarily constructed, the cases in which it has been found necessary to cross streets and public highways, under circumstances which have required, for the accommodation of the public travel upon such ways, the construction of bridges, similar to the one which is now the subject of complaint, are very numerous, and the rapid extension of rail roads, within the limits of the State, will multiply those cases almost indefinitely.

At common law, the obligation to maintain and repair bridges and highways originated, generally, in prescription, or by reason of the tenure by which lands or other property or privileges were held. *Prima facie*, the liability to repair public bridges was upon the counties, but they could relieve themselves by showing that the liability in particular cases was by prescription or otherwise upon other parties.

By the statute of 22 Henry VIII, entitled, "For bridges and highways," which Lord COKE says was in affirmance of the common law, the modes of determining who are liable to maintain bridges, and to provide means for their repair, were distinctly provided. As the provisions of this early statute have been very much relied upon in the argument, it may not be inappropriate to make such extracts therefrom as will fully show its objects, and the scope of its general provisions.

The first section of that statute provides that, "justices of the peace in every shire, &c., shall have power and authority, to inquire, hear and determine in the King's general sessions of the peace, of all manner of annoyances of bridges broken in the highways, to the damage of the King's

leige people, and to make such process and pains upon every presentment afore them, for the reformation of the same, against such as owen to be charged for the making or amending of such bridges, as the king's justices of his bench use commonly to do, &c.

" II. And when in any parts of this realm it cannot be known and proved what hundred, riding, wapentake, city, borough, town or parish, nor what person certain, or body politic, ought of right to make such bridges decayed, by reason whereof such decayed bridges, for lack of knowledge of such as owen to make them, for most part lie long without amendment, to the great annoyance of the king's subjects.

" III. For the remedy thereof, be it enacted, &c., *that in every such case,* the said bridges if they be without city or town corporate, shall be made by the inhabitants of the shire or riding, within which the said bridge decayed shall happen to be." This section then proceeds to provide for the repair of bridges in cities, towns corporate, &c.

The fourth section then makes provision for the " speedy reformation" and amending of bridges in " every case where it cannot be known and proved what persons, lands, tenements and bodies politic owen to make and repair" them.

It will be observed, that this statute does not impose upon counties the duty, absolutely, of repairing the public bridges. But to remedy an existing evil, arising from the inability to prove what party ought, of right, to repair such decayed bridges, by reason of which they "for most part lie long without amendment," it was provided, that when that fact could not be proved, the liability should rest upon the county, for the very satisfactory reason, given by Lord Coke, " because it is for the common good and ease of the whole county."

On examination of the English Reports, it will be found, that this *prima facie,* but contingent liability, of counties to repair public bridges, existing both at common law, and by the statute of 22 Henry VIII, is recognized in all the

cases. In no case which has fallen under our observation, has that liability been treated as unqualified and absolute. Thus it was held in *Regina* v. *Inhabitants of Wilts*, 1 Salk. 359, that the county was liable, because they failed to show, as they attempted, that the liability to repair was upon the village of Laycock.

In *Rex* v. *Inhabitants of Nottingham*, 2 Lev. 112, the county failed in a similar attempt, and for that reason were charged on their *prima facie* liability. In *The King* v. *Inhabitants of Kent*, 13 East, 220, the defendants were exonerated by showing that the Medway Navigation Company were liable by the provisions of their charter to repair the bridge in question.

In the case of *The King* v. *The Mayor and Aldermen of Stratford on Avon*, 14 East, 349, the defendants were held liable because they were bound to repair by immemorial usage.

The mere fact, however, that a private individual built a bridge in the highway, did not, necessarily, charge him with its repair and maintenance, but if it become useful to the county in general, the county shall repair it. 5 Barrow, 2594; 2 East, 342; 2 M. & S. 513.

There is still another class of cases in which it is supposed that both by the common law and under the statute of Henry VIII, counties are exonerated from their liability to repair bridges in the public highways. The leading case, relied upon as authority, is cited in Rolle's Ab. 368, where the principle is thus stated; "If a man erect a mill for his own profit, and make a new cut for the water to come to it, and make a new bridge over it, and the subjects use to go over it as over a common bridge, this bridge ought to be repaired by him who has the mill and not by the county, because he erected it for his own benefit."

This case, which is very frequently cited, was much discussed in the case, *The King* v. *Inhabitants of Kent*, 2 M. & S. 513. L'd ELLENBOROUGH, in that case, caused search to be made for the original record of that case, which was

State *v.* Gorham.

found and is published in a note to the case then under consideration. The record begins with a commission to inquire who ought to repair the bridges and causeway between *Stratford Bow* and *Ham Stratford*. This commission subsequently found that the bridges, &c. were built by Queen Matilda, and that she purchased certain lands, rents, meadows, and a certain water mill, &c., which she gave to the Abbess of Barking on condition that she and her successors should repair and sustain the said bridges and causeway, when it should be necessary, forever. L'd ELLENBOROUGH, after examining the record, remarks, " thus it appears that the real question was an obligation to repair, by reason of the tenure of certain lands, and that no such question as supposed by L'd Rolle, that is, of legal obligation resulting from the building of the bridge by the mill owner for his benefit, was ever directly or indirectly decided, or could properly be argued."

There are, however, incidental facts stated in the record, from which the abstract in Rolle was probably deduced.

From a review of the English authorities, it most clearly appears, that neither the common law nor the statute of Henry VIII., imposed upon counties an unqualified liability to repair public bridges; but if, in any of the modes which have been referred to, the liability to repair could be fixed upon other parties, counties were exonerated, otherwise they were liable.

In New York the same doctrine seems to obtain. Several cases have been cited in which corporations and individuals have been held liable for damages occasioned by defects in bridges constructed by them, for their own benefit, and from which the public derived no advantage whatever.

The case of *Hencock* v. *Sherman*, 14 Wend. 58, was an action against the defendant as a stockholder in the Buffalo Hydraulic Association, for injury to a horse, received in passing over a bridge, built by the association over a canal.

By their charter, their members were rendered individu-

ally liable, for *demands* against the association. It was on this provision in the charter that the plaintiff claimed to charge the defendant. The Court held, that the word *demand*, referred to debts against the company, and did not include such claim for damages. But in giving their opinion, the Court say, " if the writ had been against the corporation, we should have held them responsible. The act of cutting the canal and building the bridge was theirs. It was authorized, and of course lawful. The obligation attached to them to repair upon the common law principle." Though this is rather an *obiter dictum* than a decision, yet the point discussed was so distinctly before the Court, that the opinion expressed is entitled to much consideration.

The case of *Dygert* v. *Schenck*, 23 Wend. 446, was for an injury to plaintiff's horse, occasioned by falling through a bridge over a race-way to defendant's mill. It appeared, that in 1826, the defendant dug a race-way, across a public road, to conduct water to his mill, and built the bridge across said race-way, which ever after that time, was used as a part of the road, by the public. The defendant was held liable, and the case in 1 Rolle's Abr. 368, above cited, was relied upon, as being sound law, and directly in point.

In this case, the Court maintain the doctrine that a proprietor of land, over which a public way is located, may use the soil for any purpose not inconsistent with the safety and convenience of travelers. And for that purpose may cut drains or watercourses across such public ways. But in all cases, where the whole benefit accrues to the individual, and none to the public, the liability to maintain such bridges, rests upon the party making the watercourse. The same doctrine, as to the right of an individual to cut watercourses across public ways, on his own land, is asserted in *Perley* v. *Chandler*, 6 Mass. 454.

In Massachusetts, the Act of March 5, 1787, provides, that " all highways, town ways, causeways and bridges, lying and being within the bounds of any town, shall be kept in repair and amended from time to time, that the same may be safe

State *v.* Gorham.

and convenient for travelers with their horses, teams, carts and carriages, at all seasons of the year, at the proper charge and expense of the inhabitants of such town, (*when other sufficient provision is not made therefor,"*) &c. Our statute of 1821, c. 118, § 13, is a literal transcript of the above, which is substantially the same provision as is found in the Province Laws, c. 23, § 1, *Ancient Charters,* 267–8, and which is retained in the Revised Statutes of Massachusetts.

In these several statutes, it will be observed, that the liability of towns is not made absolute, but is qualified. Thus, in Ancient Charters, the qualification is, " when it is not otherwise settled." In the Acts of '87, '21, and the R. S., of Mass., the language is, " when other sufficient provision is not made therefor," thereby, as in the statute, 22 Henry VIII., and at common law, recognizing the principle, that instances may occur in which other parties may be liable to maintain bridges across public highways. The case of *Sawyer* v. *The Inhabitants of Northfield,* 7 Cush. 490, turned upon this point. The defect for which the plaintiff sought to recover damages against the town, was in the bridge, in the town of Northfield, erected on a public highway, over and across a deep cut made by the Connecticut river rail road company, for the use of their road. This bridge was built by the rail road company. The Court say, that by § 1, c. 25, R. S., it is provided, that all highways, town ways, causeways and bridges, within the bounds of any town, shall be kept in repair, at the expense of such town, when other sufficient provision is not made therefor. This makes a qualified, and not a general liability. If there be a turnpike, or bridge corporation bound, either by general law, or by the terms of its charter, to maintain and repair a highway or bridge, then, by the terms of the statute, towns are not liable. It is not to be regarded as a special exemption from the performance of a duty; it forms a case where the liability of towns does not attach. The Court being of opinion that there was sufficient provision made

by law for the expense of keeping said bridge in repair, the town was not held liable.

The cases cited in New York and Massachusetts, were actions brought by individuals, for damages sustained. Whether, in case indictments had been found against the towns or counties within which those defective bridges were located, for such defects, they would not have been held liable in the first instance, may not be wholly free from doubt. But whatever may be the effect of the common law or statute provisions in force in those States, we think there can be no doubt of the effect of existing statute provisions in this State. The statute of 1821 has been materially modified by the R. S. § 57, c. 25, reads as follows : —

" All highways, town ways, causeways and bridges, laid qut or being within the bounds of any town or plantation, such as is described in § 43, c. 25, shall be duly opened and kept in repair, and amended from time to time, that the same may be safe and convenient for travelers and their horses, teams, carts and carriages; and in default thereof, such town or plantation shall, on presentment of the grand jury for the county in which such town or plantation is, and on conviction thereof, be liable to pay such reasonable fine, as the court having jurisdiction thereof may order."

The qualifying words in the statute of 1821, " where other sufficient provision is not made therefor," are omitted, and no equivalent terms inserted; and the liability to indictment for defects is made absolute and unqualified, thus changing, not only the earlier statutes of this State and Massachusetts, but also the statute of 22 Henry VIII., and the common law.

Such important changes could not have been the result of inadvertence, because the qualifying terms of the old statutes are not only omitted, but positive terms are added, by which the liability to indictment is distinctly provided against towns.

Substantial reasons may be suggested for this change. The safety and convenience of those who travel upon our public ways have ever been primary objects in the estima-

tion of the Legislature. The introduction of rail roads, and the frequency with which they cross public ways, as well under bridges as at grade, has greatly increased the hazards of ordinary traveling. It is important that the most certain, prompt and efficient means should be provided against these new and increasing causes of inconvenience and danger to travelers. Towns have the general supervision of highways. By holding them primarily responsible, a very much more convenient and certain remedy is afforded the public, than could be had against private individuals or corporations. Against towns the remedy is simple, speedy and certain; against other corporations or individuals there would be uncertainty as to the existence of the liability, and in many instances, still greater uncertainty as to the pecuniary responsibilities of the parties.

Nor does this statute discharge rail road corporations, or other parties, who by statute, or in any other way, are required to maintain and repair bridges or highways, from their liability to do so, nor leave towns without remedy. They may compel rail road corporations to keep such bridges as the law requires them to maintain, in repair, by mandamus. *Cambridge & Somerville* v. *Charlestown Branch R. R. Co.* 7 Met. 70; *Rex* v. *Birmingham & Gloucester R. R. Co.* 9 Car. & P. 469. Or by indictment. *Rex* v. *Inhabitants of Oxfordshire*, 16 East, 223. Or if money be expended by the town in necessary repairs, by action on the case.

But it is contended that these structures are not bridges, within the meaning of the statute. That the term bridge can only be appropriately applied to structures erected over such waters as fall within the description, *flumen vel cursus aquæ*, &c. Such may have been the original meaning of the word. But modern usage has given it a more enlarged signification. Worcester thus defines the word bridge, "a pathway erected over a river, canal, road, &c. in order that a passage may be made from one side to the other." It is in

this enlarged sense that the word is used in the Revised Statutes, as well as in common language.

The statute of 22 Henry VIII. was confined to "annoyances of bridges broken in the highways." The provisions of § 57, c. 25, should undoubtedly be restricted to those bridges existing in ways, upon which the public have the right to travel, and within that limitation, under our statute, we think towns are primarily liable for defects, not only in the highways, but in bridges, constructed in the manner and under the circumstances under which this bridge was erected.

According to the agreement of the parties the case is to stand for trial.

SHEPLEY, C. J., and HOWARD, HATHAWAY and CUTTING, J. J., concurred.