THE TOWN OF TOLLAND *vs.* THE TOWN OF WILLINGTON.

The towns of T. and W. erected and maintained at their joint expense and as
a joint duty, a bridge across a river which was their dividing line. The
original structure, which was erected in 1807, was 150 feet in length, but as
the bridge was renewed from time to time, the open space was reduced by
extending the embankments into the river, until, in 1854, the bridge was but
65 feet in length. The embankments as thus extended were made and kept
up and railings erected thereon at the joint expense of the towns. In 1854,
in consequence of an insufficient railing, an injury was sustained on the
embankment in T. and within the space occupied by the original structure.
*Held that the towns were jointly liable for the injury.*
And evidence that the selectmen of both towns had for so long a time built and
maintained the whole 150 feet, whether embankment or bridge, as the joint
duty and at the joint expense of the towns, was held to be admissible to
show their joint liability.
The word "bridge," under our statute, properly includes in its meaning the
structure itself and such abutments as are necessary to make the structure
accessible and useful; but exactly what constitutes a bridge in a particular
case is a question of fact rather than of law.
A motion for a new trial is the proper remedy for error in admitting or reject-
ing testimony, or in the charge of the judge to the jury,—a motion in error
for errors in the declaration, pleadings, and judgment.
Upon a motion in error there must be a special assignment of the errors relied
on, before the trial.


ASSUMPSIT. The facts in the case are sufficiently stated
in the opinion.

*Brockway* and *Hyde*, for the plaintiff.

*M. Welles*, for the defendant.

ELLSWORTH, J.  It appears that in 1807 there was a bridge, 150 feet long, spanning the Willimantic river, between the towns of Tolland and Willington.  It had ever been the practice, as it was the duty, of these towns, to build and maintain this bridge at their joint and equal expense, as the statute directs where a river or stream is the dividing line between two towns.  The bridge standing in 1807 was carried off by high water in 1818, and the towns, concluding that it would be best to reduce this space of 150 feet by filling a part of it with abutments of earth, gravel and stone, in order that the bridge or structure might be more permanent, very much reduced the open space, and built a bridge of wood, which latter was replaced by the towns in 1835, when the space was still more reduced by further extending the abutments into the river, until the distance between the abutments was reduced to about sixty-five feet.

The neglect which has given rise to the damages and suit in question was an omission to place a proper railing on the north or upper side of the solid part of the work on the Tolland side of the river, but within the original space of 150 feet.  The language of the motion is, " all of the aforesaid bridges and abutments were made and have been maintained by said towns, at their joint and equal expense."

An injury having been sustained and damages being claimed by William S. Moore and William W. Moore, and a suit brought by William S. Moore against the towns jointly, and the persons injured being willing to compromise for $275, the towns agreed with each other that if Tolland would, in the first instance, pay the said Moores the $275, Willington would repay Tolland the one-half, provided Willington was by law equally liable with Tolland for said damages.  The plaintiffs have paid the sum named to the Moores and the latter have released their claims.

There being no dispute as to the facts of the settlement

and of the payment of the $275, this suit presents this single question, — Were the defendants equally liable with the plaintiffs for these damages? Or, in another form, were the towns bound jointly to keep and maintain this abutment and railing? The court has found that they were liable. This finding seems to us exactly to meet the point in issue and to settle the disputed fact upon which the defendants were to become obligated to pay. If no error of the court has intervened in receiving the evidence upon which it has arrived at this conclusion, we do not see why the defendants are not liable on their promise. All the evidence before the court does not appear to be stated, but only a part, so far as we learn from the motion itself. It should have been stated to be all, if it were indeed all; or if, upon the facts which are stated, the judge had doubted of their legal sufficiency, he could have ruled one way or the other, or have reserved the question for this court, when we should have had a clean question of law on the record. At present, we have no evidence that the judge intended any thing of the kind. He made an absolute decision as to the liability of the defendants as the case lay before him on the evidence. We do not now see that but one error or supposed error is presented, and no other is found in the errors specially assigned. And as to the general assignment, it amounts to nothing, as will be apparent when we consider the point, as we will do presently. The special error to which we refer is the admission by the court of evidence on the part of the plaintiffs that the selectmen of both towns had always built and maintained the entire structure, whether solid or open, which served for a passage over the entire 150 feet, as a joint duty and at their joint expense. But herein is no error. It is the constant practice to receive the acts of selectmen, as conducing to prove the relation of the town towards highways, bridges, paupers, and whatever else comes within their appropriate province or jurisdiction. Selectmen stand on the same ground with other agents. The weight of the evidence will depend on circumstances, as in other cases of principals and agents. Here the length of time during which succes-

Tolland *v.* Willington.

sive selectmen of the two towns have unitedly acted, the repetition and publicity of their acts, and the severe responsibilities and burthens assumed by the towns, give a decisive character to this evidence, and we are not surprised that the judge felt its full weight, and decided that the towns, having made and maintained the entire structure for the 150 feet as their joint bridge, abutment, or highway for a half century and more, were liable to pay these damages. We might add, were it necessary, that since it is clear, from the facts admitted, that the two towns were at first liable to build and maintain a bridge of some kind to connect the two points or banks 150 feet apart, little evidence could be necessary to prove the continuance of the obligation. Although it is not, in our view, necessary to go further, yet we must think a writ of error is not the proper or usual mode for bringing before this court the supposed mistake of the judge in receiving this evidence. For an error of this character in the superior court, under our law, a motion for a new trial is the true remedy. A writ of error or motion in error will bring up properly a revision of the declaration, pleadings and judgment, but not an error in receiving or rejecting evidence, or in the charge òf the court. We notice it, that a salutary rule of law may be preserved and followed.

Much stress has been laid on the insufficiency in law of the facts specifically found by the judge, to sustain his conclusion that it was the duty of the towns to maintain the abutment and railing at their joint expense. We have already said that the judge's motion does not present such a question; but further, no such error is assigned. The assignment of the first error is in these words:—" That judgment should have been rendered for the defendants instead of the plaintiffs." What is the error ? Is it in the declaration, the pleadings, the reception of evidence, or in something else ? We can not tell. Were the *declaration* insufficient, perhaps a general assignment would answer; for the meaning of such an assignment is this: that if the facts, each and all of them, are taken as stated by the plaintiff in his declaration, still he is not entitled to judgment. But this

declaration is sufficient, and the error, if there be any, must be hunted out if we are to correct it, whereas, by the rule of this court, it must be specially pointed out before trial by a suitable assignment.

Allowing, however, that we can notice that from the facts recited in the motion, (assuming them to be all the facts,) the judge has drawn an inference that Willington is jointly bound with Tolland to maintain this railing, we are not satisfied that he has therein committed an error, for it may be that this abutment is part of the bridge. We can not say, as matter of law, how this is. We can not decide, as matter of law, what is bridge or what is abutment,—where one begins and the other ends, or what is mere highway. It is more a question of fact than of law, and may be sometimes a very nice and difficult one. If a bridge is considered to be a pathway for traveling over a stream of water, or if the work of a bridge includes whatever is necessary to make it accessible, as we think is intended by the statute respecting bridges, when it requires towns to maintain necessary bridges, the abutments may be parts of a bridge. At any rate, these towns have so treated this structure, whether of earth, wood, or stone, which occupies this space of 150 feet. At first it was all wood; it may become so again, for the stream is unchanged, except that the abutments confine it to a narrower and deeper channel. The towns could well agree to fill out the work in a permanent form from the shores, if they thought it wise and best. *Parker* v. *Boston & Maine R. R. Co.*, 3 Cush., 107. 1 Whart. Lexicon, 114. Ang. on High., 27.

We may learn something from analogous cases. If a town, or two towns whose division line is a river, neglect to build a necessary bridge, the public authorities may build it and charge the expense to the town or towns as the case may be. May not these public agents build abutments, such as are indispensable to make the bridge accessible and useful? Rev. Stat., tit. 24, § 3. So where turnpike companies are obliged to build bridges in old highways, the com-

missioners may designate the extent of its abutments. Rev. Stat., tit. 24, § 58.

We do not attach much importance to a mere scientific definition of the word *bridge*, especially in this case, the parties having adopted their own construction of their duty, and acted upon it for a half century.  But Brande's Encyclopedia defines it, " a structure for the purpose of connecting the opposite banks of a river, by means of certain materials, forming a road way from one side to the other."

In *Bardwell* v. *Jamaica*, 15 Verm., 438, the court decided that "abutment," by description in pleading, comes within the word " bridge."  The same was held in *Board of Freeholders* v. *Strader*, 3 Har., 108.  In *The King* v. *The West Riding in York*, 7 East., 596, it was held, that the county being obliged to support bridges as distinct from the highways, was obliged to support the abutments extending 300 feet back from the bridge structure, at each end,—this being required by the statute of Henry VIII., which was held to be in affirmance of the common law.  Lord Ellenborough said that he considered it to have been laid down long ago by Lord Coke, that the 300 feet of highway at the ends of the bridge are to be taken as *parts of the bridge itself*, being in the nature of the thing intimately connected with it, and the exact limits difficult in some cases to be ascertained, from the continuation of arches beyond the sides of the river; that the statute of Henry VIII. was intended to define the limit which was perhaps uncertain at common law, but that the statute proceeds upon the presumption that there existed a common law liability, &c.  The same was held in the House of Lords.  *Inhabitants of West Riding in Yorkshire* v. *Buckley*, 5 Taunt., 284.  See also 4 Petersdorf's Ab., 708.  An arbitrary rule of 300 feet might not, and we think would not, be proper in this country, but it shows that the question, what constitutes exactly a bridge within the meaning of our statute, is not of course a question of law.

It is again contended that when the bridge was in part made solid, and the solid part extended from time to time, so much of it ceased to be bridge and became abutment or

highway. This is not necessarily so. The space was at first 150 feet, and may become so again should the towns discontinue their joint action to preserve the entire structure as it is. For their mutual benefit they have made the solid parts, at times of unequal extent, on the respective sides, for their joint benefit. At first, the eastern abutment was built into the river twelve feet and the western thirty. In 1835 the western was extended twelve feet and the eastern thirty, but this did not change the relation of the towns, nor did they expect that it would. We are satisfied that they have all along taken a wise and just view of their mutual relations and obligations.

It was said that the selectmen could not bind their respective towns by their action, for it was out of their jurisdiction. The towns could bind themselves through their selectmen, and this is all that was necessary. A clear vote of the towns would not be more efficacious to that end.

There is no error.

In this opinion the other judges concurred.

Judgment affirmed.