STATE OF MAINE *vs.* INHABITANTS OF MADISON.

*Franchise—who can interpose. Chartered rights—waiver of—evidence of. Location—errors in—no defense to indictment for bad road. Special findings of a jury conclusive.*

In the trial of a town on an indictment for not keeping in repair a highway extending from the end of a toll-bridge at the side of an island, thence across the island and the lesser channel of the river to the main shore, the objection that the location by the commissioners is within the chartered limits of the toll-bridge corporation is not open to the town.

When a corporation is chartered to erect a toll-bridge across a river, and they erect one across the main channel to an island, they may waive whatever rights they have for erecting a bridge across the lesser channel. And evidence that the treasurer of the corporation procured the location of a highway from the end of the toll-bridge, across the island and the small channel to a way on the main shore, and caused the town to be indicted for not keeping such way in repair, is sufficient evidence of such waiver.

The opening of a specific part of a highway, within six years from the time allowed therefor, prevents the discontinuance of that part, notwithstanding another portion of the same location has not been seasonably opened, and has thereby been discontinued.

The fact, that the record of the county commissioners shows that the return of their doings was not recorded when it should have been, is fatal to their proceedings when presented by *certiorari*; but it cannot be taken advantage of by the town in defense of an indictment for not keeping the way in repair.

The special finding of a jury is conclusive on the parties in the absence of any motion to set it aside, and of exceptions to the rulings in relation thereto.

ON REPORT.

The case is stated in the opinion.

*J. S. Abbott*, for the State, contended

1. By the charter, the bridge corporation had no authority to build their bridge, except " across the Kennebec river between Madison and Anson."

2. The island and the site of the small bridge are within the town of Madison, and wholly outside of their chartered limits; and the corporation had no authority under their charter, to build a small bridge, or exact toll for crossing it.

3. Neither the road across the island nor the small bridge was ever regarded as part of the toll-bridge.

4. They were built and kept in repair for a time, not as part of the toll-bridge, but for the purpose of opening communication between the east end of the toll-bridge proper, and the traveled way.

5. The location of a town way in 1844, by the county commissioners, was valid. The corporation joined in the petition. The town acquiesced, and from that time till the bridge was carried away in October, 1869, the road across the island and the small bridge were kept in repair by the town and included in surveyors' limits.

6. Commissioners had jurisdiction in making the location of highway in 1847. The town acquiesced and had exclusive care of the way until October, 1869.

7. The alleged omission by the county commissioners to have the location recorded at the proper time, cannot be objected to now.

8. This road has not been discontinued, because not opened by Cornville and Skowhegan.

*D. D. Stewart*, for the defendant.

1. The bridge was to extend " across the Kennebec river."

2. The finding of the jury settles the fact that the channel in controversy was a part of that river.

3. The corporators so understood it, and acted accordingly in extending their bridge " across the river."

4. They, in accordance with their charter, elected to build their bridge over an island for convenience and economy, the island thus becoming a pier, both structures constituting a " toll-bridge across the Kennebec river."

5. Having elected thus to build their bridge, they are bound to maintain it. *Webster* v. *Larned*, 6 Met. 529; *Commonwealth* v. *Hancock Bridge*, 2 Gray, 58.

6. They are liable to indictment if they refuse. *Commonwealth* v. *Central Bridge*, 12 Cush. 244.

7. The location of highway never had any validity. The county commissioners had no authority to lay out a highway over a toll-bridge, without a special act of the legislature. *Central Bridge* v. *Lowell*, 4 Gray, 474.

8. The return of the commissioners was not recorded at the first term after made, and the pretended highway was, therefore, never legally established. R. S. of 1857, c. 18, § 37.

9. The location has been quashed by this court.

10. And it was discontinued by operation of law. *State* v. *Cornville*, 43 Maine, 427.

DANFORTH, J. This is an indictment for not repairing a highway therein described. It appears that in 1827, the legislature granted a charter for a toll-bridge "across the Kennebec river, between Anson and Madison," and in 1828 and 1829 the bridge was built, in pursuance of said charter, from the Anson shore to an island. On the easterly side of this island is a channel of water claimed by defendants to be a part of the Kennebec river; but this is denied by the government. This question was submitted to the jury, and by a special verdict they have found that this easterly channel, at the time the charter was granted, was, and ever since has been, a part of the Kennebec river. No motion to set aside this verdict has been filed, no exceptions to the ruling of the presiding judge, or requests for further or different instructions. Therefore the verdict, as far as it goes, is conclusive. Its effect upon the result is an open question. We are also satisfied from the report of the case that the island is within the town of Madison. When the bridge was built under the charter, there was no way across the island and no bridge across the eastern channel sufficient to accommodate the public travel. The proprietors of the toll-bridge, claiming that they had fulfilled the obligations of their charter in building to the island, continued a way across the island, and built a better bridge over the eastern channel for the sole purpose, as they allege, of opening their bridge to the public travel and thereby making it effectual. In 1844, the treasurer of the bridge corporation, and others, petitioned for a town way across the island and channel, which, on appeal to the county commissioners, was established as a town road in 1845. In 1846, on petition therefor, the county commissioners located a highway over the town way

and corresponding thereto, and to the way originally built by the bridge proprietors, and continued the same "through Madison and a part of Cornville and Skowhegan, as prayed for." That part of the road thus located, which extends from the end of the larger bridge across the island and eastern channel, is the highway described in the indictment. The insufficiency of the bridge is admitted but the way is denied. The legal existence of this highway is the only question involved. Several objections are made in defense.

A want of authority on the part of the county commissioners is the first objection relied upon. This objection rests upon the allegation that it is an interference with the chartered rights of the bridge company. It may admit, perhaps, of a serious question whether this way is located within the limits of the bridge charter. Whether the language of the charter, authorizing a bridge "across the Kennebec river, between the towns of Anson and Madison," is not fully complied with, when the bridge is built from the Anson to the Madison shore, across that part of the Kennebec lying between the two towns. But it is unnecessary to decide this question. If the bridge company have rights under their charter they may waive them. That they have waived any such rights is sufficiently proved, if proof were necessary, from the facts found in the report, that the first way was located, in part at least, through the instrumentality of the treasurer of the corporation, and the same corporation caused this indictment and are now doing what they can to secure its prosecution to final judgment.

Another equally valid answer to this objection to the jurisdiction of the commissioners is, that it is not open to the defendant town. None can interpose a franchise except those who have rights under it. If the corporation does not choose to set it up, no others can. In this case it is not in a position to do so, as it is not legally a party, nor does it have any occasion to do so, as no party is claiming any rights belonging to the company. But it is said the charter imposes burdens as well as confers rights, and that these burdens cannot be waived or surrendered to the town. This may be and

undoubtedly is so.   But it is a question of jurisdiction we are dis-
cussing, and it is the rights of other parties that interfere with
jurisdiction, and not their liabilities.   If relieving parties from bur-
dens, or changing them to others, prevented the exercise of legal
authority, it is difficult to perceive how the commissioners could be
sure of a right to act in any case.   Perhaps in every location of a
way, some one is relieved of a burden, and certain it is, liabilities
are imposed which did not before exist.   When a private way is
made public, the burden of repairs is changed, and no reason is
perceived why a toll-bridge, either in part or in whole, may not by
the commissioners be converted into a highway, where the rights of
those interested under the charter are not interposed, and the only
objection made is that it throws the burden of repairs upon other
persons or bodies.   But in this case we cannot adjudicate upon the
liabilities of the bridge corporation.   They are not a party in any
such sense as will make a judgment binding upon them.   If the
town or any other party claims that the bridge corporation are liable
to repair, when that claim is presented, in the proper form, it can
be adjudicated upon.   But the only question now before the court
is as to the liability of the town.   If there is a legally established
highway there, the public have a right to have it in such a state of
repair as to be "safe and convenient for travelers."   It may be that
both the town and the bridge corporation are liable to repair; if so,
the town may have a remedy in some other process.   We are only
to ascertain its liability under this, and we see no objection to it on
the ground of a want of authority on the part of the commissioners
to lay out the road.   *Commonwealth* v. *Petersham*, 4 Pick. 119.

Another objection urged is, that the highway in question was
discontinued by operation of law, not having been opened within
six years from the time allowed.   By a decision of this court this
objection was held valid so far as it relates to that part of the loca-
tion which lies in Cornville.   *State* v. *Inhabitants of Cornville*, 43
Maine, 427.

This decision, however, does not refer to any part of the way
outside of that town.   The case finds that the highway in Madison,

State *v.* Inhabitants of Madison.

including that part described in the indictment, "was laid out chiefly over town roads, that had long been traveled as such." The road in question was included in the limits of one of the highway surveyors of Madison, as early as the spring of 1840, and was then opened and traveled. This presents the question whether the opening of a specific part of a highway, within six years from the time allowed, prevents the discontinuance of that part, when another portion of the same location has not been opened and is discontinued.

In *Baker* v. *Runnels*, 12 Maine, 237, Weston, C. J., says, "It may be presumed that this long neglect on the part of the town, without complaint, is full evidence that such road was not required by the public convenience, notwithstanding the adjudication of the court." In *Harkness* v. *Waldo County Commissioners*, 26 Maine, 353, it was held that "the county commissioners by adjudging that the way prayed for is of common convenience and necessity, adjudge each portion of it to be so."

It follows that so much of the road as has been opened has been adjudged to be of common convenience and necessity. This is confirmed by its being opened and traveled, and is not disproved by the fact that another part of the same location has not been opened. The way in question, then, is not within the reason and spirit of the statute. Nor does it necessarily come within a fair construction of its language.

By R. S. 1841, c. 25, § 42, in force when this way was located, "Any highway . . . laid out by the county commissioners, and not opened within six years from the time allowed . . . shall be deemed discontinued." This language has not been materially changed in the subsequent revisions. The commissioners are authorized to lay out a highway within the limits of one town. They may locate a portion of a road petitioned for, and when so located, it is as much a road and a whole road as though all the prayer of the petition had been granted. So the way in question, when located and opened, was a road and not a part of one, and there would seem to be as much propriety, if the parts cannot be separated, in say-

ing that the whole was opened and not discontinued, as in saying that the whole road was not opened and was discontinued. A fair construction of the statute requires that such parts of a location as have been opened and traveled so as to be properly called a road or highway, should not be deemed discontinued. This view is confirmed by the fact that the statute does not make void the location. That is still valid, and this provision is only one form of discontinuing a way no longer needed. Why may not a portion of the location be discontinued in this manner as well as in other prescribed modes.

Another objection raised is an error in the records of the commissioners. It does appear that the return of the doings of the commissioners was not recorded as early as it should have been. In *Cornville* v. *County Commissioners*, 33 Maine, 237, this was held to be a fatal error when presented by a proper process. But it has become well settled that the records of the county commissioners cannot be impeached collaterally, and must be considered binding until quashed by *certiorari*. It is, however, claimed that this record has been quashed, and for proof certified copies of the records of this court from Somerset county have been annexed to the argument of the counsel for defendant. This is not properly a part of the case, but no objection is made to its admission by opposing counsel, while it is contended that it does not show that the record has been quashed. On examination, it appears that the court granted a writ of *certiorari*, while it does not appear that the writ did or did not issue. This would seem to be necessary before the defective record could be legally quashed. Still the counsel asserts, unqualifiedly, that the record has been quashed. We are not willing to believe that any counsellor of this court would make such an assertion without at least good grounds for believing it true. We therefore think, as it may be vital to his case, he should have an opportunity to show it.

On the other hand, the counsel for the prosecution claims that the town having repaired the way in question for more than twenty years, under this record, it is now bound by prescription to repair,

and hence is liable to this indictment. This point was not only not raised at the trial, but the report shows that it was disclaimed by counsel. This, too, may be vital to the case, but we cannot consider this point certainly until the other side has an opportunity to be heard upon it. The report should, therefore, be discharged, and the case stand for trial upon these last two points.

*Report discharged.*

APPLETON, C. J.; WALTON, DICKERSON, and TAPLEY, JJ., concurred.