## WILLIAM McKINLEY and others

### v.

## THE CHOSEN FREEHOLDERS OF UNION COUNTY.

1. A court of equity has power to enjoin a fraudulent or unlawful appropriation of public moneys by a board of chosen freeholders.

2. The acts of a board of chosen freeholders, within the limits of their power, are not reviewable by the courts.

3. Chosen freeholders may lawfully bridge a canal, or a water-course created by surface water.

4. The right of determining where bridges shall be built is committed to the chosen freeholders, and, so long as they exercise their power honestly, their judgment is not open to review in the courts.

5. Notice from an overseer of the highways is not necessary to authorize the board to build, rebuild or repair; they may do either without notice.

6. A court of equity is not the tribunal to correct the errors of the subordinate departments of government.

---

On filing the bill an order was granted enjoining the defendants from appropriating any public money to pay for the bridge in controversy, and requiring them to show cause

---

NOTE.—At *common law*, it seems, counties were bound to repair. bridges erected over such water only as answers the description of *flumen vel cursus aquæ*.   *Bridges* v. *Nichols*, Vin. Bridges (*A*) *pl.* 13; *Rex* v. *Oxfordshire*, 1 *B. & Ad.* 289; *Rex* v. *Whitney*, 3 *Ad. & El.* 69; *Rex* v. *Lancashire*, 2 *B. & Ad.* 813.

why an injunction should not issue pursuant to the prayer of the bill.  This order was heard on bill and answer.

*Mr. Parrott* and *Mr. Joseph B. Alward*, for motion.

*Mr. William B. Maxson, contra.*

THE VICE-CHANCELLOR.

Three tax-payers of Union county seek, by this court, to prevent the board of chosen freeholders of that county from making what they allege will be an illegal and fraudulent appropriation of public moneys.  The power of this court to interfere, by injunction, to prevent a public body or functionary from making a fraudulent or unlawful appropriation of moneys raised by taxation, is undoubted.  *Kerr on Inj.* 573; *High on Inj.*, §§ 373, 793.

The bill charges that the chosen freeholders have, without authority of law, constructed an expensive stone trench, sluice or drain under and across the public highway, near the Cranford depot of the New Jersey Central Railroad, in the township of Cranford, the dimensions of which are given; that there is no stream, rivulet or water-course now running through it, and there is none in that locality which

---

Where shallow water was confined by abutments, to prevent the overflowing of adjoining meadows, it was left to the jury to determine whether it was a bridge.· *Rex* v. *Gloucestershire,* 1 *Car. & M.* 277.

Part of a bridge may consist of arches, under which the water does not continually flow.  *Reg.* v. *Derbyshire,* 2 *Q. B.* 745.

A structure over a canal is not a bridge for the non-repair of which a county can be indicted.  *State* v. *Hudson Co.,* 1 *Vr.* 137 ; see *People* v. *Canal Trustees,* 14 *Ill.* 402.

Nor a foot-bridge formed by three planks, about nine or ten feet long, and a hand-rail, which carries a public foot-path over a small stream.  *Reg.* v. *Southampton,* 14 *E. L. & E.* 116, 18 *Q. B.* 841.

*Aliter,* as to a foot-path which constituted part of a bridge, and had been recognized as such by frequent repairs.  *Wayne Co.* v. *Berry,* 5 *Ind.* 286 ; see *Reed* v. *Hanger,* 20 *Ark.* 625 ; *Rex* v. *Middlesex,* 3 *Barn. & Ad.* 201.

A foot-path for travelers constitutes a part of a bridge, therefore, a mere *viaduct,* used exclusively for the passage of railroad cars, is not one.  *Bridge Co.* v. *Hoboken Land Co.* 2 *Beas.* 81, 503, 1 *Wall.* 116, 3 *Wall.* 782; *Lake* v. *Virginia Co.,* 7 *Nev.* 294.

can be diverted so as to pass through it; that the ground about it is high and perfectly dry, and entirely free from marsh, fen or springs; that this erection cannot be called a bridge in any sense of the term, but is simply an expensive sluice or culvert, incapable of any public use whatever, except, possibly, it may be made to serve as part of a sewer for the village of Cranford.

It is further charged, it was built for the purpose of defrauding the tax-payers of Union county, and that this purpose will soon be accomplished by an appropriation of public moneys to pay for it. From this summary, it will be seen, the gravamen of this action is, that the chosen freeholders intend to fraudulently misapply the moneys placed at their disposal for certain public uses, in paying for a bridge so palpably useless and unnecessary, that their determination to build it cannot be deemed an exercise of discretion, but a willful prostitution of the power committed to them.

The answer presents a state of facts so radically different, in every essential particular, from that presented by the bill, that it is difficult to believe they both relate to the same affair. It avers that the erection in question is a substitute for a tubular bridge, built by order of the board, on the

A county cannot build a bridge over an inlet of the sea. *Commonwealth* v. *Charlestown*, 1 *Pick.* 179; *State* v. *Dibble*, 4 *Jones* (*N. C.*) *Law* 107; *State* v. *Anthoine*, 40 *Me.* 435; see *Att'y-Gen.* v. *Stevens*, *Sax.* 370; but see *People* v. *Meach*, 14 *Abb. Pr.* (*N. S.*) 429; *Groton* v. *Hurlburt*, 22 *Conn.* 178; *Gillespie* v. *Freeman*, 7 *La. An.* 350; *Hickok* v. *Hine*, 23 *Ohio St.* 523.

A covering of boards over a ditch dug by a city for its own use, was held to be a bridge. *Rusch* v. *Davenport*, 6 *Iowa* 443; see *Raymond* v. *Lowell*, 6 *Cush.* 524; *Allentown* v. *Kramer*, 73 *Pa. St.* 406; *Requa* v. *Rochester*, 45 *N. Y.* 129.

Structures for the passage of travelers, erected over a railroad where it crosses an established highway, are bridges. *State* v. *Gorham*, 37 *Me.* 451; *Newlin* v. *Davis*, 77 *Pa. St.* 317; see *State* v. *Dover*, 46 *N. H.* 452.

Exactly what constitutes a bridge in a particular case, is a question of fact, rather than of law. *Rex* v. *Whitney*, 3 *Ad. & El.* 69; *Tolland* v. *Willington*, 26 *Conn.* 578; *Moreland* v. *Mitchell*, 40 *Iowa* 394.

It has been held that a bridge is a mere substitute for a ferry. *People* v. *Saratoga R. R. Co.*, 15 *Wend.* 133; see *Ward* v. *Gray*, 6 *B. & S.* 345.

McKinley v. Chosen Freeholders of Union Co.

same site, about four years ago, and which proved too small to carry away the water accumulating there; that in heavy rains, and when large bodies of snow melt, a large body of water collects at the point where this bridge is built, rendering it not only necessary, but indispensable to the convenience and safety of public travel, that it should be carried across the highway by a bridge, the surface being much lower on one side of the road than on the other.

So much of the equity of the case of the complainants as rests upon the charge that this bridge was built merely to cover a wanton misappropriation of public moneys, is effectually met and overcome by the answer. The present structure is not a new project. It is distinctly affirmed the present bridge takes the place of a prior one, which was built and paid for by the county without a question being raised as to the propriety of the expenditure. Two different boards have concurred in deciding that a bridge on this site is necessary. No wrongful purpose is imputed to the first. If the determination of either board was made in the fair exercise of power conferred upon it by law, its judgment is not subject to review by the courts. The courts cannot control them in the proper exercise of their powers. It is only when they transcend their powers, or clearly

By the New York statute, county commissioners' liability is confined to bridges over actual streams. *Wright* v. *Smith*, 27 *Barb.* 621.

A public bridge is merely a part of the public road. *People* v. *Com'rs*, 4 *Neb.* 150; *Rapho* v. *Moore*, 68 *Pa. St.* 404; *Troy* v. *Cheshire R. R. Co.*, 3 *Fost.* (*N. H.*) 83; see *Freedom* v. *Ward*, 40 *Me.* 383; *Gallia Co.* v. *Holcomb*, 7 *Ham.* (*O.*) 366; *Baird* v. *Clark*, 12 *Ohio St.* 87; *McVicker* v. *Noble Co.*, 25 *Ohio St.* 608; *Rex* v. *Bucks*, 12 *East* 192.

So held in a city. *Chicago* v. *Powers*, 42 *Ill.* 169; see *Beaver* v. *Manchester*, 26 *L. J.* (*Q. B.*) 311; *Shartle* v. *Minneapolis*, 17 *Minn.* 308; *Manderschid* v. *Dubuque*, 29 *Iowa* 73.

But an indictment for not repairing a highway, will not be sustained by proof of a defective bridge. *State* v. *Canterbury*, 28 *N. H.* 195.

A structure over a ravine which was dry most of the time,—*Held* to be a bridge. *Taylor* v. *Davis*, 40 *Iowa* 295; see *Topeka* v. *Tuttle*, 5 *Kan.* 311, 425.

The abutments are part of a bridge. *Sussex* v. *Strader*, 3 *Harr.* 108; *Ang. on Highways*, §40, note (1); *Bardwell* v. *Jamaica*, 15 *Vt.* 438; see *Crowell* v. *Sonoma Co.*, 25 *Cal.* 313; *Tolland* v. *Willington*, 26 *Conn.* 578.

abuse the discretion committed to them, that the courts can interfere.

The complainants have no case, in my opinion, on the ground of fraudulent or wanton misappropriation, at least, none upon the facts stated in the answer.

But it is insisted by the counsel of the complainants, that, on the defendants' own showing, the structure under consideration is not a bridge within the meaning of the law, at least, not such a bridge as the chosen freeholders are authorized to build. His proposition, broadly stated, is, that their power is limited to the erection of bridges over natural streams, having a perennial source, and that they have no power to bridge a water-course created by surface water, nor an artificial water-course, nor a ravine or railroad cut. It is undoubtedly true their powers are purely statutory, but there is nothing in the statute respecting bridges, nor in the act constituting the boards of the several counties corporate bodies, limiting their power in this respect; indeed, the word stream or water-course does not occur in either act. The second section of the act respecting bridges (*Rev.* p. 85) enacts, that when the expense of erecting, rebuilding, or repairing a bridge shall exceed $50, and be less than $500, the chosen freeholder of the township where

---

Also, the approaches. *Moreland* v. *Mitchell Co.*, 40 *Iowa* 394; *New Haven* v. *New York, &c. R. R.*, 39 *Conn.* 128; *Penn* v. *Perry*, 78 *Pa. St.* 457; *Commonwealth* v. *Deerfield*, 6 *Allen* 449; *Daniels* v. *Athens*, 55 *Ga.* 609; see *State* v. *Madison*, 59 *Me.* 538; *Burritt* v. *New Haven*, 42 *Conn.* 174; *Watson* v. *Libson Bridge*, 14 *Me.* 201.

Under 22 *Hen. VIII*, c. 5 (A. D. 1531), the approaches, as to which a liability to repair existed, were limited to 300 feet. *West Riding, &c.* v. *Rex*, 2 *Dow* 1; *Reg.* v. *Lincoln*, 8 *Ad. & El.* 65.

But this statute does not apply to a bridge built by a railroad company. *London, &c. Co.* v. *Skerton*, 5 *B. & S.* 559.

This statute is not in force in the United States. *Titcomb* v. *Fitchburg R. R. Co.*, 12 *Allen* 259; *Hill* v. *Supervisors*, 12 *N. Y.* 52; but see *State* v. *Hudson Co.*, 1 *Vr.* 137, 138; *State* v. *Gorham*, 37 *Me.* 451.

A *railing* is essential to, and constitutes part of a bridge. *Taylor* v. *Davis*, 40 *Iowa* 295; *Davis* v. *Allamakee Co.*, *Id.* 217; *Chandler* v. *Fremont Co.*, 42 *Iowa* 58; *Thorp* v. *Brookfield*, 36 *Conn.* 320; *Houfe* v. *Fulton*, 29 *Wis.* 296; *Holley* v. *Winooski Co.*, 1 *Aik.* (*Vt.*) 74; *Bronson* v. *Southbury*, 37 *Conn.* 199; *Norris* v. *Litchfield*, 35 *N. H.* 271.

But not for travelers to rest upon. *Sherm. & Redf. on Neg.*, § 391.

McKinley *v.* Chosen Freeholders of Union Co.

the bridge is located, and the chosen freeholders of the two next adjacent townships, or a majority of them, shall be authorized, if they think proper, to order that the said bridge shall be built, rebuilt, or repaired. The language selected, it will be observed, confers very large discretionary powers; the freeholders are made the sole judges whether it is proper, or necessary, or judicious to build, rebuild, or repair, and they are left without restriction or direction as to locality or material. The supreme court, in defining the powers granted by this provision, has said: "The law does not define under what circumstances, or in what situations they may order the building or rebuilding of a bridge, but leaves it to their judgment and discretion, and this discretion cannot be taken from them and transferred to the courts." *State* v. *Freeholders of Essex,* 3 *Zab.* 214. The courts have no right to interfere with the action of any of the agencies of government entrusted with power to be exercised according to their discretion, so long as they act within the limits of their power. *Plum* v. *Morris Canal Co.,* 2 *Stock.* 260.

Bridges are built over streams, where they cross the public highway, to facilitate travel, and to render it convenient and safe at all times. The object of their erection

---

Ordinarily, there must be a highway existing at each terminus of a bridge, to justify its erection as a public charge. *People* v. *Supervisors,* 47 *Ill.* 256; *Broadnax* v. *Groom,* 64 *N. C.* 244; *Beckwith* v. *Whalen,* 9 *Hun* (*N. Y.*) 408; see *People* v. *Meach,* 14 *Abb. Pr.* (*N. S.*) 429.

Although, whether there would be such access to the bridge as to make it of public utility, is a question for the jury. *State* v. *Northumberland,* 44 *N. H.* 628.

That the approach on one side is private property, will not relieve a county from the duty of repairing a bridge. *State* v. *Wood Co.,* 41 *Wis.* 28; see *Bingham* v. *Marion Co.,* 55 *Ind.* 113.

The commissioners may alter the direction of the highway at a bridge. *Maddox* v. *Ware,* 2 *Bail.* (*S. C.*) 314; see *People* v. *Chicago R. R.,* 67 *Ill.* 118; *Brookins* v. *Central Co.,* 48 *Ga.* 523; *Buffalo Turnpike Co.* v. *Buffalo,* 1 *N. Y. Sup. Ct.* 537.

It is no defence to an indictment of a town for not repairing a road, that such repairs would be useless because the approach of a bridge connecting with that part of the road has been carried away, and not rebuilt. *Com.* v. *Deerfield,* 6 *Allen* 449.

is to remove either a permanent or temporary obstruction. Some streams are so deep that they cannot be crossed at any time except on a bridge, while others are not impassable except when flooded, but a bridge is indispensable to a free and safe passage over either at all seasons, and in all conditions of the stream. A free and safe passage over all portions of the public highway is the common right of every citizen. An artificial water-course may be a more serious obstruction than a natural stream. A public road, laid out over a canal, would be useless and impassable until the canal was bridged. Can there be the slightest doubt that the building of a bridge over the canal in such a case would be a legitimate exercise of the power committed to the freeholders? So, too, the laying out of a public road over a railroad cut, thirty feet deep, would render a bridge absolutely necessary to any use of the road whatever at that point. It is not necessary now to decide whether the erection required in such a case could be considered a bridge in the sense in which that term is used in the statute conferring power on the freeholders, or not, but it is a well-known fact, bridges at such places have, in several instances,

---

Where one terminus of a bridge was on a street, and the other on an ordinary road, see *Dively* v. *Cedar Falls,* 27 *Iowa* 227.

A canal company cannot, by erecting a bridge within city limits, impose upon such city the duty of keeping it in repair, nor that of opening streets for the sake of access thereto. *Joliet* v. *Verley,* 35 *Ill.* 58; see *Meadville* v. *Erie Canal Co.,* 18 *Pa. St.* 66; *Plum* v. *Morris Canal Co.,* 2 *Stock.* 256; *Brookins* v. *Central R. R. Co.,* 48 *Ga.* 523; *State* v. *Yarrell,* 12 *Ired.* (*N. C.*) 130; *Erie* v. *Erie Canal,* 59 *Pa. St.* 174.

The public must build a bridge on a highway laid over an *artificial* water-course. *Perley* v. *Chandler,* 6 *Mass.* 454; *People* v. *Canal Trustees,* 14 *Ill.*403; *Groton* v. *Haines,* 36 *N. H.* 388; see *Rev.* Roads, p. 1017, ¿ 120.

*Aliter,* where the highway is laid out before the railroad or canal, &c *Morris Canal Co.* v. *State,* 2 *Zab.* 537, 4 *Zab.* 63; *Indianapolis* v. *McClure,* 2 *Cart.* (*Ind.*) 147; *Nobles* v. *Langley,* 66 *N. C.* 287; *Rex* v. *Kerrison,* 3 *M. & S.* 526; *Rex* v. *Lindsey,* 14 *East* 317; *Lowrey* v. *Delphi,* 55 *Ind.* 250; *Trenton Water Power Co. Case, Spen.* 659; *Sampson* v. *Goochland,* 5 *Gratt.* (*Va.*) 241; *Sawyer* v. *Northfield,* 7 *Cush.* 490; *People* v. *Troy R. R. Co.,* 37 *How. Pr.* (*N. Y.*) 427; *People* v. *Chicago R. R. Co.,* 67 *Ill.* 118; see *Louisville Co.* v. *Murphy,* 9 *Bush* (*Ky.*) 522; *Dygert* v. *Schenck,* 23 *Wend.* 446; *Sherm. & Redf.* on *Neg.,* ¿ 358.

The liability of the town, however, remains. *Whart.* on *Neg.,* ¿ 969.

McKinley v. Chosen Freeholders .of Union Co.

been built by the freeholders, and paid for with county funds, without question or complaint. On the present application it must be taken as true that the bridge in question is erected over a water-course created by surface water alone. Such collections of water may, under certain circumstances, constitute a natural water-course, and confer upon those through whose lands it flows the same rights they would have in a stream fed by perennial springs.

In *Earl* v. *DeHart*, 1 *Beas.* 280, the court of errors and appeals approved Chancellor Williamson's definition of a natural water-course. He said: "If the face of the country is such as necessarily collects in one body so large a quantity of water, after heavy rains and the melting of large bodies of snow, as to require an outlet to some common reservoir, and if such water is regularly discharged through a well-defined channel, which the force of the water has made for itself, and which is the accustomed channel through which it flows and has flowed from time immemorial, such channel is an ancient, natural water-course." The accuracy of this definition is not questioned by *Bowlsby* v. *Speer*, 2 *Vr.* 351. In the same opinion it is said: "Whether it is entitled to be called an ancient water-course, and, as such, legal rights can be acquired and lost in it, does not depend

---

But not if, after the owner has built such bridge, a wider one is required, and is built to accommodate the public travel. *Phœnixville* v. *Phœnixville Co.*, 45 *Pa. St.* 135 ; see *Heacock* v. *Sherman*, 14 *Wend.* 58 ; *Rex* v. *Surrey*, 2 *Camp.* 455.

Or it is accepted by the public by laying out a road over it. *Newlin* v. *Davis*, 77 *Pa. St.* 317.

The abandonment of part of a canal by legislative authority does not exonerate the company from repairing the bridges on such part. *Penn. Co.* v. *Portage Co.*, 27 *Ohio St.* 14 ; see *State* v. *Morris Co.*, 1 *South.* 165 ; *Cambridge* v. *Charlestown Co.*, 7 *Met.* 70.

Neither the legislature nor common council can authorize an elevated bridge to be built over a public street, to the detriment of adjoining owners. *Knox* v. *New York*, 55 *Barb.* 404.

Whether a mill or a road is the more ancient is, properly, a question for the jury. *Mulholland* v. *Brownrigg*, 2 *Hawks* (*N. C.*) 349 ; see *Woburn* v. *Henshaw*, 101 *Mass.* 193.

A town is liable for defects in a bridge that is only used when an adjoining ford is impassable. *Rex* v. *Northampton*, 2 *M. & S.* 262 ; see *Rex* v. *Buckingham*, 4 *Camp.* 189 ; *Rex* v. *Devon*, *Ry. & M.* 144.

McKinley *v.* Chosen Freeholders of Union Co.

upon the quantity of water it discharges. Many ancient streams, which, if dammed off, would inundate a large region of country, are dry for a large portion of the year." It is matter of common and general information, that some of our streams which at times are very rapid and turbulent, are created wholly by surface water, having no living source, and which, if not bridged, would, in freshets, be impassable for days at a time. There can be no doubt, I think, the freeholders have power to bridge such streams, and that the safety of public travel requires its exercise wherever public roads cross streams of this character. The third section of the act respecting bridges (*Rev.* p. 85) provides that the expense of a bridge costing less than $50 may be imposed upon the county, and the thirty-eighth section of the road act (*Rev.* p. 1003) authorizes overseers of the highways to erect such bridges as can be built by common laborers. These provisions, considered in connection with the other facts mentioned, demonstrate clearly, I think, that the law has committed to the chosen freeholders the power of building bridges wherever they are necessary to the safety, convenience and freedom of public travel. To them is committed the discretion of deciding where they are necessary, and so long as they exercise their discretion honestly, and to the best of their ability, and not to further a corrupt purpose, their determinations are beyond the supervisory power of any court.

But not for defects in a ford used because a bridge is out of repair. *Sherm. & Redf. on Neg.,* § 389, *note* (3); *Jackson* v. *Greene,* 76 *N. C.* 282; *Day* v. *Crossman,* 4 *N. Y. Sup. Ct.* 122; but see *Erie* v. *Schwingle,* 22 *Pa. St.* 384; *Green* v. *Bridge Creek,* 38 *Wis.* 449.

The liability of a *township,* at common law, has been denied. *Niles* v. *Martin,* 4 *Mich.* 557; *Leoni* v. *Taylor,* 20 *Mich.* 148; *Waltham* v. *Kemper,* 55 *Ill.* 346; *Russell* v. *Steuben,* 57 *Ill.* 35; see *Whart. on Neg.,* § 266; *Dillon on Mun. Corp.,* § 786.

For mode of pleading in cases of damages sustained, see *Worster* v. *Proprietors, &c.,* 16 *Pick.* 541; *Hoosket* v. *Amoskeag Co.,* 44 *N. H.* 105; *Griswold* v. *Gallup,* 22 *Conn.* 208; *Frankfort Co.* v. *Williams,* 9 *Dana* (*Ky.*) 403; *Mechanicsburg* v. *Meredith,* 54 *Ill.* 84; *Riest* v. *Goshen,* 42 *Ind.* 339; *Smith* v. *Wright,* 27 *Barb.* 621; *Bartlett* v. *Crozier,* 17 *Johns.* 439.—REP.

McKinley *v.* Chosen Freeholders of Union Co.

It is also insisted that the freeholders were not authorized to act in this instance, because they were not called together by an overseer of the highways.    The second section of the bridge act already. referred to, provides that when the expense of erecting, rebuilding or repairing a bridge shall exceed $50, and be less than $500, it shall be the duty of an overseer of the highways to call the freeholder of the township where the bridge is located, and the freeholders of the two next adjacent townships, together, at a certain time and place, by written notice, under his hand, for the purpose of taking the same into consideration, and power is then conferred upon the three, or a majority of them, to take such action as they may think proper.    Notice from an overseer, it·is contended, is a condition of the power.    It is clear it is not made so by express words; if it exists, it arises by implication.

I am unable to discover anything in the act, or in the connection, or the relation of these officials, which gives the slightest support to this view.    To hold that notice from an overseer of the highways is an indispensable preliminary to any valid action by the freeholders respecting bridges, would make that officer a much more important functionary, in the management of county affairs, than he has hitherto been understood to be, and would concede to him an authority and importance quite unsuited to his office.    I think the statute must be construed to give the freeholders the right to exercise their power in respect to bridges without notice from, and independent of, any action by an overseer of the highways, and that the duty enjoined by the statute upon the overseers to give notice, is a mere measure of precaution, designed to secure prompt action by the freeholders in case public travel is interrupted or rendered dangerous by the sudden destruction of a bridge or serious injury to it.

It is also said that the bridge in controversy was an unauthorized structure, because its erection was not sanctioned by the requisite number of freeholders.    It would seem to be quite difficult to reconcile this averment with

the prior one, charging the whole board with having built this bridge without authority of law, but if its truth is admitted, still the case made will not entitle the complainants to the aid they ask. Something more than mere error or irregularity must be shown. The board answers and defends the legality of the structure. No fraud is charged or shown. In this condition of affairs it is apparent the complainants are in the wrong forum. The supreme court is the proper tribunal to review the action of inferior tribunals, and to correct the errors and irregularities of the subordinate agencies of government. *Morris Canal Co.* v. *Jersey City*, 1 *Beas.* 252. Cases may arise involving the same questions presented by this case, which it will be the duty of this court to take cognizance of and determine, but to render such action proper they must be marked by some well-defined equity not discoverable in the record of this case as it now stands.

The order to show cause must be discharged. The case presented on the bill made it the clear duty of the court to arrest this appropriation, and an order was accordingly made forbidding it; the case made by the answer renders the discharge of the order imperative. It is impossible, at this stage of the cause, to tell which representation of the facts is truthful and which is fabricated. The costs must, therefore, abide the event of the suit.