HON. ASA O. ALDIS,  
HON. JOHN PIERPOINT, } ASSISTANT JUDGES.  
HON. ASAHEL PECK,

---

## IRA POWERS *v.* THE TOWN OF WOODSTOCK.

*Highways and Bridges.   Pleading.   Evidence.*

In an action to recover damages for an injury occasioned by a defect in a highway, a declaration describing the highway and its defects in general terms, without describing what and where the defects were, held good.

A committee appointed by the legislature for the purpose, laid out and established the bridge and highway in question at the corner of four towns, and apportioned the expense of building the bridge between said towns. Under the direction of the committee "wing walls" were built from the abutments of the bridge back several feet, and the space between was filled up by the four towns as a part of the expense of building the bridge; and the wing walls and railing thereon have since been sustained at the joint expense of the said towns; but the town of Hartland, within which the bridge and highway were located, built the highway

over the space between the said walls up to the bridge and did work upon it from year to year as upon other highways. *Held,* that the town of Woodstock, to which the portion of Hartland where the bridge and highway were located, had been annexed, was responsible for the portion of road between the wing walls, not the four towns that built the bridge.

After the said road was graded by the highway surveyor of the district under the direction of the selectmen of Hartland, they made a survey thereof and caused it to be recorded. *Held,* that the facts shown constitute sufficient adoption of the road to make the town liable to travellers for injuries occasioned by defects in it.

The charge of the court as to the burden of proof held correct.

Action on the case to recover damages for an alleged injury to the plaintiff by the insufficiency of an highway in Woodstock. Plea, the general issue, and trial by jury, May Term, 1864, Poland, Ch. J., presiding.

The plaintiff's evidence tended to prove that on the 24th of November, 1860, he and his wife were riding in a single wagon upon the highway in Woodstock, and were about to cross a bridge over the Queechy river, near the village of Taftsville, and that about thirty feet from the south end of said bridge there was a small sag or ditch across the road to carry the water across, and on the lower or bridge side of said sag or ditch there was a bar or embankment made to cause the water to run across the road, instead of running down the road on to the bridge ; that in passing over this sag and bar the kingbolt of his wagon was thrown out and the plaintiff and his wife thrown from the wagon and injured. The plaintiff claimed that the injury to himself and his wife was caused by the said obstruction.

The following facts appeared from the evidence : The village of Taftsville, now in Woodstock, formerly in Hartland, was near the corners of four towns, Woodstock, Pomfret, Hartford and Hartland. There was a road up and down Queechy river upon each side, but no bridge across in that vicinity.

In 1835, by an act of the legislature, a committee appointed for the purpose laid out and established the present bridge across Queechy river at the village of Taftsville, and also a highway from the highway on the south side of the river to that on the north side, over said bridge, and determined the proportions of expense between said four towns, and the manner of building the bridge. Their report

was made and returned to the county court in Windsor county, and accepted. The bridge was built in 1836 by the said four towns, according to the report of said committee, and has ever since been maintained by them accordingly. The report of the committee required that wing walls should be built from the abutments of the bridge back to the upper banks of the river, and that the space between the abutments and the banks enclosed by these wing walls should be filled by the four towns as part of the expense of building the bridge, and this was done accordingly. These wing walls and the railings upon them have ever been kept in repair at the joint expense of the towns building the bridge.

On the south side of the river the ascent from the bridge to the highway, running up and down the river, was too steep to admit of a road being built directly from the bridge up to the road, and accordingly two ways were made from the end of the bridge to the river road—one turning up the river towards Woodstock, the other down the river towards Hartland. It is about nine rods from the south end of the bridge to the river road by either of these roads. These roads were built by the town of Hartland, except the filling between the abutments and the bank, which had been made by the four towns, and the wing walls formed the supports on the sides of both as far as they extended.

Both these roads were somewhat steep, and on the inner side of each was a ditch, and these two ditches intersected about thirty feet from the end of the bridge. In spring and fall, and whenever much rain fell, a considerable quantity of water was brought down each of these ditches, and without some means to turn it off it would run directly down upon the bridge. To avoid this a slight depression or ditch was made directly across the Hartland road, or spur as it was called, from the intersection of the road ditches, to turn the water across the road over the embankment into the river, and a small embankment was made across the road to force the water to run across the road. It did not appear by whom this was first done, but it was so fixed soon after the bridge was built, and continued to be used in that way down to 1843. In 1843 some complaint was made of the steepness of the Hartland spur, and a petition was presented to the selectmen of Hartland to lay the road from the bridge so as

to intersect the river road at a lower point, and thus get an easier grade. This was opposed by the person owning the land, and the matter was finally compromised by the selectmen agreeing to have the existing road graded down and pushed a little to the east, so as to avoid the steepness complained of, and the petitioners agreed not to press their petition. Under the direction of the selectmen the highway surveyor of the district graded down the road from the river road to the end of the bridge, according to the agreement, and after it was completed the selectmen made a survey of it and caused it to be recorded.

It appeared that the four towns that built the bridge employed a person living near the bridge to take care of it and make any needed repairs upon it, and this agent also repaired the bar when necessary to protect the bridge from the water. It also appeared that whenever work was done upon the road there, if the bar needed any repairs they were made by the highway surveyor, and that he at the time the road was graded in 1843, put in a log culvert under the road where the water was carried across it, but the culvert became filled up in two or three years, and the former mode of carrying water over the road was resorted to again. The last repairs upon the bar were made by the highway surveyor of the district in September, 1860, when, as the plaintiff claimed, it was made so steep and high as to render the highway unsafe. A line drawn from the extreme land-point of one wing wall to the same point of the other, would be five or six feet south of the bar across the road complained of, and the bar was thirty feet from the end of the bridge itself. The bridge and road mentioned, when built, were in the town of Hartland, but by an act of the legislature in 1852, that part of Hartland was annexed to the town of Woodstock.

The court charged, contrary to the request of the defendant, that upon the facts proved, the highway, at the point where said bar was situate, was a part of the highway belonging to the town of Woodstock to keep in repair, and any claim for damages by reason of the want of repair there was properly made against the town of Woodstock,—to which the defendant excepted.

As to the burden of proof, the court told the jury that the plaintiff's evidence must show that apparently his injury was caused by

the defect in the road, and without fault on his part; that after the plaintiff had done this, then the burden of proof would be cast upon the defendant to show that the plaintiff had been guilty of such neglect or want of care as would preclude his recovery, and further, that upon the whole evidence, if it appeared that the plaintiff's injury was, in any part, caused by his own neglect or want of care, he could not recover. The defendant excepted to these instructions. After verdict for the plaintiff the defendant filed a motion in arrest for alleged insufficiency of the plaintiff's declaration. The declaration described the road and its defects in general terms. It neither described what the defects were nor where they were. The motion was overruled,—to which the defendant also excepted.

*Converse & French*, for the defendant, maintained, 1st, that the motion in arrest should have prevailed, and cited G. S., p. 200, § 41; *Briggs* v. *Guilford*, 8 Vt. 264; *Barton* v. *Montpelier*, 30 Vt. 653. 2d. Woodstock not alone liable. The place where the accident happened was a part of the bridge. *Noyes* v. *Morristown*, 1 Vt. 353; *Bardwell et al.* v. *Jamaica*, 15 Vt. 438. 3d. The charge was wrong as to burden of proof. *Hyde* v. *Jamaica*, 27 Vt. 443. The burden of proof is always on the plaintiff in such a case, through all its stages. *Yuran* v. *Randolph*, 6 Vt. 369.

*Washburn & Marsh*, for the plaintiff, maintained that the charge as to the burden of proof was correct. *Barber* v. *Essex*, 27 Vt. 69. The motion in arrest should not prevail. All such defects as those alleged are cured by verdict. *Lincoln* v. *Blanchard*, 17 Vt. 464; *Morey* v. *Homan*, 10 Vt. 565; *Needham* v. *McAuley*, 13 Vt. 68.

The opinion of the court was delivered by

ALDIS, J. The motion in arrest was properly overruled. The declaration in describing the road and its defects uses very general terms. It does not describe what the defects were, nor where they were. But such generality in the description has been in common use in such declarations, and is found in the forms most commonly adopted in practice. But even if open to objection on demurrer, the defects are those merely of defective description, and are cured by verdict.

A more important question in the case is, is the place where the injury was occasioned a part of the bridge, or of the highway?

If a part of the bridge, then the four towns are jointly liable ;—if the highway, then Woodstock may be sued alone.

The claim of Woodstock, that it is a part of the bridge, rests upon the report of the committee which ordered the bridge to be built, and upon their construction of it. After directing the bridge to be built, and that there should be an abutment on the south side of the river, the report orders a wing wall to be built from each end of the west abutment to the bank, and "to be filled up with stone and gravel well compacted." The defendant claims that the space enclosed between these two wing walls and the bank to which they extend and the bridge, and which was to be thus filled up, was a part of the bridge, and that what now appears as the road for about thirty-six feet from the wooden end of the bridge is really bridge as established by the committee. Adopting this construction, and measuring from the end of one wing wall in a straight line to the end of the other, the place where the accident happened falls within the space so enclosed, and therefore the four towns, and not Woodstock alone, should have been sued.

In giving construction to the report we must have regard to all they did, and endeavor to give to it all a consistent meaning, and the one they intended. They also' laid a road from the old highway over the place now in question, and so on over the bridge. If this road extends to the abutment and wooden part of the bridge, then Woodstock alone is liable ; for it is for the bridge only and not for the road that the four towns are liable. The road so laid is chargeable upon Woodstock alone.

In building the wing walls and in ordering the space between them to be filled with stone and gravel, the committee intended to secure the bridge from injury—to preserve the abutment from being hurt by the action of the water in the stream. This could be well done by filling in the space with stone and gravel, and yet not preparing the surface of it for a road. The filling might be left wholly unsafe for travel, and yet secure the bridge. But by laying a road over it they secured the working and smoothing of the surface for a road. Hence the space might be filled and there be no road, and the road when laid and made might extend to the wooden part of the bridge. This we think was their intent. Construing the language of the

report in its plain and ordinary sense no one could regard the open space of road for thirty-six feet south of the bridge as being "bridge" and not "road". So other passages in the report which speak of the bridge refer plainly to the bridge as usually understood, and not to the abutments and wing walls and the area thereby enclosed. In this view the *locus in quo* was in the road and not in the bridge, and it is needless to consider whether the court was correct in holding as matter of law that the road at this point had been adopted by the town. We may remark, however, without restating the facts of the case, that we all concur in holding the facts shown as sufficient to constitute a legal adoption of the road so as to make the town liable to travellers for injuries occasioned by defects in it.

The last question is as to the charge of the court as to the burden of proof. The charge we think is misconstrued by the counsel for the defence. Substantially and by fair construction the court in their charge adopted the very rule for which the defendant contends.

The court told the jury that "the plaintiff must show that apparently his injury was caused by the defect in the road, and without any fault on his part." If the plaintiff is to show that there was no fault on his part, what is that but using other words to say that he must by affirmative evidence show he was not wanting in ordinary care. This proof, "that the injury was caused without any fault on his part," he must make in the outset. The court do not tell the jury that if there is no proof on the subject negligence will not be presumed; but positively that *he must prove in the outset* that the injury happened without fault on his part. The plaintiff making this proof and resting, if the defendant do not rebut it and show negligence, this point is made out for the plaintiff. The expression used by the court that "the burden of proof would be cast on the defendant to show" that the plaintiff had been guilty of neglect, taken in connection with what he had already told the jury the plaintiff must show in order to recover, is not, we think, fairly susceptible of the meaning the defendant attaches to it, viz : that upon considering all the evidence the defendant must show by a fair balance of proof that the plaintiff was guilty of negligence. It is not telling the jury where the burden of proof rests when all the evidence is in, but only where it rests in that stage of the trial.

He proceeds to tell the jury that upon the whole evidence if it appeared that the plaintiff's injury was in any part caused by his own neglect or want of care he could not recover.   It is true that this does not tell the jury upon whom the burden of proof rests to make this appear—whether upon the plaintiff by a fair balance of proof to show that there was no want of care, or upon the defendant by fair balance of proof to show that there was want of care.

But it does not appear that there was any request that the court should instruct the jury as to this point.   In the absence of a request on this point, and of a refusal to comply with the request, we cannot say that error appears in the charge.   The court may have charged either way,—we are not to presume they charged wrong. Especially would this be unjust when the court told the jury that the plaintiff, in order to recover, must in the outset show there was no fault on his part,—and when we know that it is the familiar rule of law that what the party must show in the first instance to recover he must sustain by a fair balance of proof.

As to the question whether the burden of proof, when all the evidence is in, rests upon the plaintiff to show no want of care, or upon the defendant to show negligence, we do not propose to pass upon it now.   However clearly the rule may be established in England, and in Massachusetts and some of the other states, it is known that there has been diversity of opinion among the judges in this state, and diverse rulings in trials in the county court.   The conflicting opinions of Judge REDFIELD and Judge BENNETT, as they appear in the two cases cited from the 27th Vermont illustrate this.   It is obvious that there is a difference of opinion in New York among their judges.   The note at the end of *Button* v. *The Hudson River R. R. Co.*, 18 N. Y. 259, indicates this.   *Lester* v. *Pittsford*, 7 Vt. 158,—Judge PHELPS.

Judgment affirmed.