## WILLIAM AND PAUL TINKHAM *v.* TOWN OF STOCKBRIDGE.

*How far the approaches are a part of bridge. Evidence. Notice.*

1 Whatever is necessary to connect the structure which spans a stream and the abutments on which it rests with the highway built on solid ground, and make that structure accessible and useful as a part of the highway, is a part of the bridge.

2. The injury complained of was occasioned by the falling of the plaintiff's horse over an embankment wall, which he claimed was a part of the approaches to the bridge. This the defendant denied and insisted that it was a retaining wall rendered necessary by the construction of another highway to connect with the one which originally crossed the stream at this point. *Held*, that the defendant should have been permitted to ask of witnesses long acquainted with the locality what part of the support of the bridge or of the filling of the abutment was made by the bank wall at the place of the accident.

3. Nor would the error occasioned by the exclusion of this evidence be cured by the fact that a photograph of the locality was exhibited to the jury.

4. The declaration alleged that the bridge was defective in that there was a high wall extending about fifty feet from end of the bridge, and that there was no sufficient guard on said abutment or approach. The notice set forth that the horses ran onto the abutment of the bridge, and for want of a guard thereon one of them went off the first abut-

William and Paul Tinkham v. Town of Stockbridge.

ment about five feet from the end of the bridge. *Held,* that the notice supported the declaration, it appearing from other evidence in the case that the wooden structure of the bridge extended some distance beyond the abutment proper.

5. *Held,* further, that the notice was sufficient, for that the selectmen, with it in hand, could have found without difficulty the place.

Case for negligence of defendant in maintaining a defective bridge. Plea, the general issue. Trial by jury at the May term, 1891, Ross, Ch. J., presiding. Verdict and judgment for the plaintiff. The defendant excepts. The questions raised sufficiently appear in the opinion.

The notice was as follows:

To O. G. Richardson, Wm. H. Edmunds and Charles Cobb, selectmen of the town of Stockbridge:

You are hereby notified that on the 21st day of March, A. D. 1890, at said Stockbridge, one Wells Blanchard, of said Stockbridge, was driving a span of horses belonging to us down the hill in said Stockbridge between the so-called Stony Brook bridge and the dwelling house of Emmans Knowlton in said Stockbridge, that said horses then and there on said hill became frightened and unmanageable and ran away and got away from said Blanchard and ran towards said Stony Brook bridge and onto the abutment thereof, and for want of proper and sufficient muniment or guard on said abutment, one of the horses went off said abutment and fell a distance of from ten to fifteen feet, thereby killing said horse. Said horse fell from the first abutment of said bridge on the right hand side as one would go from Rochester to Bethel, about five feet from the end of the bridge, nearest the junction of the Stony Brook road with the so-called river stage road.

And you are hereby notified that we shall claim satisfaction of the town of Stockbridge for the injury and damage occasioned to us as aforesaid.

WM. TINKHAM & SON."

*Hunton & Stickney* and *W. E. Johnson,* for the defendant.

The question as to what part of the approaches the retaining wall formed was one of fact, not opinion, and proper. *Lund and wife* v. *Tyngsborough,* 9 Cush. 36, 39; *Porter* v. *Pequonnoc Mfg. Co.,* 17 Conn. 249, 256.

Even if an opinion, it was of such a nature as to be admissible. *Hardy* v. *Merrill*, 56 N. H. 227, 241; 1 Whart. Ev. ss. 509-513; *Parsons* v. *Insurance Co.*, 16 Gray, 463, 467; *State* v. *Folwell*, 14 Kan. 110; *Indianapolis* v. *Huffer*, 30 Ind. 235, 237; *Bates* v. *Sharon*, 45 Vt. 475, 480; *Fulsom* v. *Concord*, 46 Vt. 140.

There was no evidence tending to show that the wall at the place of the accident was a part of the bridge. *Powers* v. *Woodstock*, 38 Vt. 44, 49.

*J. J. Wilson*, for the plaintiff.

The charge as to what of the approach constituted a part of the bridge was correct. *Bardwell* v. *Jamaica*, 15 Vt. 438; *Tolland* v. *Wellington*, 26 Conn. 578; *Freeholders of Sussex* v. *Strader*, 3 Harrison, N. J. 102; *Penn. Township* v. *Perry County*, 78 Pa. St. 457; *Daniels* v. *Athens*, 55 Ga. 609; *State* v. *Gorham*, 37 Me. 461; *Commonwealth* v. *Central Bridge Corp.*, 12 Cush. 242.

The notice was sufficient. *Law* v. *Fairfield*, 46 Vt. 425; *Ranney* v. *Sheffield*, 49 Vt. 191; *Bliss* v. *Whitingham*, 54 Vt. 172; *Melendy* v. *Bradford*, 56 Vt. 148; *Reynolds* v. *Burlington*, 52 Vt. 300.

The evidence rejected was an opinion upon the very question for the jury. *Lester* v. *Pittsford*, 7 Vt. 158; 1 Star. Ev. 153; *Clifford* v. *Richardson*, 18 Vt. 620; *Cram* v. *Northfield*, 33 Vt. 124; *Frazer* v. *Tupper*, 29 Vt. 410; *Cavendish* v. *Troy*, 41 Vt. 99; *Fulsom* v. *Concord*, 46 Vt. 135; *Oaks* v. *Weston*, 45 Vt. 430; *Carpenter* v. *Corinth*, 58 Vt. 214; *Stowe* v. *Bishop*, 58 Vt. 498; *Bennett* v. *Rd. Co.*, 58 Vt. 636.

The opinion of the court was delivered by

ROWELL, J. The court charged in effect that, whatever was necessary to connect the wooden structure that spanned the stream and the stone abutments on which it rested with the highway built on the solid ground, and to make the structure acces-

sible and useful as a part of the highway, was a part of the bridge. This was substantially correct. As we have no statute that determines the question, we must resort to the common law to find out what, aside from the structure itself, constitutes a part of a bridge.

By the common law of England, declared by 22 Hen. VIII. c. 5, and subsequent bridge acts, where the inhabitants of a county are liable to the repair of a public bridge, they are liable also to the repair of the highway at the ends of the bridge to the extent of three hundred feet. *The King* v. *The West Riding of York*, 7 East, 588. In that case Lord *Ellenborough* said he considered it as having been laid down long ago by Lord *Coke* that the three hundred feet of highway at the ends of the bridge are to be taken as a part of the bridge itself, being in the nature of the thing immediately connected with it, and the exact limits difficult in some cases to be ascertained from the continuation of arches beyond the sides of the river; that the highway within the limits of the three hundred feet at each end is dependent on the bridge as to its form and dimensions, as its level must be varied as the bridge is made higher or lower, so as to make the ascent or descent more gradual.

But in this country there is no arbitrary distance at the ends of bridges that can be said as matter of law to constitute a part of them, but it is more a question of fact for the jury in the circumstances of the particular case, to be determined under proper instructions. That the abutments proper are to be taken as a part of the bridge there seems to be no question. *Bardwell* v. *Jamaica*, 15 Vt. 438.

In the *Board of Freeholders* v. *Strader*, 3 Harrison (N. J.), 108, the horse fell from the part of the way that connected the abutment proper of the bridge with the land, ordinarily called *the filling up.* This the freeholders, who were county officers, claimed was no part of the bridge but a part of the road or causeway, and therefore should have been repaired by the overseers

of highways, who were township officers. But *the filling up* was held to be a part of the bridge because it was necessary to make the bridge itself accessible.

In *Penn Township* v. *Perry County*, 78 Pa. St. 457, two counties were bound by statute to build a bridge. It was fully completed, except that the space between the wing-walls on the Perry County side of the river was not filled in with earth nor other material so as to make approach to the main structure possible; and the question was, whether the township or the county was liable for the expense of this filling-in, and this depended upon whether the wing-walls and the filling-in were to be taken as a part of the bridge or a part of the road leading thereto, and they were held to be a part of the bridge. The Court said that the bridge was incomplete until everything necessary for its proper use was supplied, and that every such necessary appliance was a part of the bridge.

In *Daniels* v. *The Inhabitants and Wardens of Athens*, 55 Ga. 609, plaintiff's horse backed from a bridge off a contiguous embankment. The Court charged that if the embankment was contiguous to the bridge, and necessary to enable teams and wagons to cross the stream over the bridge, it was in law a part of the bridge; and this was held correct. See also, *Tolland* v. *Willington*, 26 Conn. 578.

*Powers* v. *Woodstock*, 38 Vt. 44, is not in point, as the case turned on the construction given to the commissioners' report. But in *Ford* v. *Braintree*, *ante*, 144, this Court said that to bring a case within the statute, the accident must have happened and the injury have been sustained while the traveler was passing over the bridge, culvert, or sluice, or over that portion of the road that constitutes the approaches to it, so that the insufficiency or want of repair of the structure itself or of its approaches was the direct cause of the injury.

The defendant claimed that the place of accident constituted no part of the bridge but was a part of the Stony-Brook road,

which was built along there on a steep side-hill, the filling being kept in place by the retaining-wall over which the horse fell and which connected with the abutment proper of the bridge. That abutment was rebuilt in 1869, and set back from ten to twelve feet, to widen the channel, and the lower end of it extended into the natural bank. The defendant claimed that to make the bridge accessible, no alteration of the conditions existing before the bridge was built had been required, except to replace the soil removed in building the abutment on which the bridge rested, and that such replacement had not extended so far back as the point where the horse went off, but that any alteration of nature there, was due to the building of the Stony-Brook road when it was made to intersect with the river road at that end of the bridge.

The defendant called witnesses who had been long acquainted with the bridge and its approaches and with the Stony-Brook road at the point in question, and knew how they were built. After they had testified with more or less fullness to their knowledge in this respect, this question was put to them : " From your knowledge of the location, will you state to the jury what, if any, part of the support of the bridge or of the filling of the abutment is made by the bank-wall at this point ? " meaning the point where the horse went off. The question was excluded, not because it called for irrelevent testimony, but because it was thought to invade the province of the jury, in that it called for the opinion of the witnesses and not for a fact within their knowledge. If it is to be regarded as calling for matter of fact, it certainly was permissible, for, as said by the Court in ruling upon it, whether the road at that point was a part of the bridge or not was one of the principal questions of fact in the case, to be determined from all the circumstances. The question then arises, Did the question call for matter of opinion ? If not, it was proper, however it might have been if it had called for such matter. Now when we consider that it was put to witnesses

whose testimony had already shown they were likely to know just how that was as matter of fact, we think the question was not fairly susceptible of any other meaning than that of calling for the knowledge of the witnesses upon the subject and not for their opinion. Hence, it was error to exclude it. But the plaintiffs say, if error, it was harmless, because they say the photographs used in the case presented the situation fully and accurately to the jury, and that witnesses could have known nothing more about the matter than the photographs showed. But this can hardly be so, and if it was, it probably would not cure the error.

The notice of the place of injury was seasonably objected to as variant from the first count and not supporting the second count. If it supported the second count we need not inquire whether it is variant from the first count. The second count, after alleging the existence of the highway and the bridge, alleges that the bridge, with its abutments and approaches, was insufficient and out of repair in this, that there was a high wall extending from the end of the bridge nearest the Stony-Brook road about fifty feet; that there was no sufficient guard or muniment on said abutment or approach to the bridge; and that, by reason thereof, the horses running away, one of them fell over said abutment or approach about ten feet from the end of the bridge and was killed. It is evident as matter of construction that by *abutment* and *approach*, as those words are used in the count, the wall therein described is meant. The notice says that the horses ran onto the abutment of the bridge, and for want of a sufficient guard or muniment thereon, one of them went off the first abutment about five feet from the end of the bridge and was killed.

The notice saying that the horse went off the *first* abutment, the defendant claims that it should be construed to mean that it went off the abutment proper on which the bridge rested, and not off the retaining-wall, as the second count in effect alleges. But the

William and Paul Tinkham *v.* Town of Stockbridge.

trouble with this claim is, that the end of the wooden structure of the bridge extends beyond the abutment proper, and when you get five feet from the end of the bridge, as the notice puts the distance, you are quite beyond the abutment proper and well onto the retaining-wall. This clearly appears from a photograph in the case, and shows that the retaining-wall was meant and not the abutment proper. The notice, therefore, supported the second count, and was properly admitted.

The notice has been criticised as fatally uncertain in other respects. But we think it certain enough to answer the purpose for which the statute required it to be given. With it in hand, the selectmen could have had no trouble in finding the place.

The exceptions to the overruling of the defendant's motions for a verdict and to set aside the verdict, are argued on some of the grounds we have considered and on the further ground that there was no testimony in the case tending to show that the place where the horse went off was a part of the bridge. But without undertaking to group the testimony and to collate the circumstances, we think there was enough in the case to require the overruling of the motions.

*Judgment reversed and cause remanded.*