Belknap, ⎱
Dec. 4, 1906. ⎰

### WILSON *v.* BARNSTEAD.

The term "bridge" includes not only that part which spans a stream, road, or other depression, but also the abutments and such other portions of the structure as are required to render it complete according to the plan upon which it is built.

A town is liable for injuries resulting from a defect in that part of a highway which is above the abutments and other essential portions of a bridge.

Whether a particular part of a highway is upon a "bridge," within the legal definition of that word, is a question of fact.

CASE, for personal injuries happening from being thrown from a wagon by reason of a defect in a highway bridge. Trial by jury and verdict for the plaintiff. Transferred from the March term, 1906, of the superior court by *Chamberlin*, J.

The plaintiff's evidence tended to prove that the bridge is constructed of planks laid upon iron girders, the easterly ends of which rest upon an abutment ten feet in height, built of split stone laid in cement. The stones constituting the base of the abutment are five or six feet long and are laid at right angles with the stream, the ends projecting toward the thread of the stream about a foot more than the face of the abutment. The stones above the base are laid so as to form a perpendicular face toward the stream,

and, excepting the binding stones, extend backward less and less as the top of the abutment is approached. There are occasional binding stones six feet long, laid at right angles with the stream, one end being flush with the face of the abutment. There are stone headers on the top of the abutment, seven to nineteen inches wide, the inside surfaces of which are fourteen inches back from the face of the abutment. Cobble stones, placed by hand, extend backward from the split stone for a distance of six feet, and upward to within about a foot of the surface of the roadway. For a distance of about six feet further there are cobble stones which were dumped there, and which were designed to protect the split stone structure and render it secure. Such filling is commonly used in bridge building. Above the cobble stones there is sand and hard pan. The planks extend to the edge of the headers, their upper surfaces being an inch and a quarter lower than the upper surfaces of the headers. The header over which the plaintiff's wagon passed was nineteen inches wide; and the surface of the roadway for about four and a half feet from its easterly edge gradually sloped downward until it was five and one fourth inches lower than the plane of the upper surface of the header, extended in that direction on a level. From this point the surface of the roadway gradually sloped upward until it reached the level plane last mentioned, at a distance of about five feet from its lowest point. This depression extended over about twelve feet in width of the roadway and was probably caused by the wear of passing travel. There is a wing wall extending from the abutment northerly about ten feet, at an angle with the bridge, and a wall extending from the abutment southerly several feet on a line with the face of the abutment. The difference in the levels of the planking and the headers and the above described depression constituted the defect which the plaintiff says caused her injury.

The defendants moved for a nonsuit at the close of the plaintiff's testimony, and for an order of judgment in their favor at the close of all the testimony, on the ground that the plaintiff's injury was received on the highway instead of on the bridge, and that the alleged defect was not itself caused by any defect in the bridge or its permanent structure. They also moved for an instruction to the jury, in substance, that the abutment is a part of the bridge, but that the cobble stones and filling immediately back of it are not a part of the bridge. These motions were severally denied, subject to the defendants' exceptions.

After instructing the jury that the defendants were not liable unless the plaintiff's injury was caused by a defect in the bridge, and after defining a bridge, in substance, as including not only the structure which spans the stream but also the abutments upon

which it rests, and the wings, if any, and such back filling as is required to make the entire structure complete and safe, the court told them that they were to determine where the highway leaves off and the bridge begins.

*Charles B. Hibbard, Edward A. Lane, Frank M. Beckford,* and *Shannon & Tilton,* for the plaintiff.

*Jewell, Owen & Veazey,* for the defendants.

CHASE, J. " Towns are liable for damages happening to any person, his team or carriage, traveling upon a bridge . . . upon any highway, by reason of any obstruction, defect, insufficiency, or want of repair of such bridge, . . . which renders it unsuitable for the travel thereon." Laws 1893, c. 59, s. 1. The principal question raised by the exceptions is whether the alleged defect was a defect in the bridge described in the record, within the meaning of the statute. A " bridge " is defined to be " any structure which spans a body of water, or a valley, road, or the like, and affords passage or conveyance." Cent. Dict.; 4 Am. & Eng. Enc. Law (2d ed.) 919, and . 5 Cyc. 1052, and authorities cited therein. This definition necessarily implies that the term includes the abutments, if any, upon which the portion of the bridge specially designed for travel rests, and all other portions of the structure that are required to render it complete according to the plan on which it is built. The portion of the highway occupied by such completed structure is a bridge, within the ordinary meaning of the term. *Tinkham* v. *Stockbridge,* 64 Vt. 480; *Tolland* v. *Willington,* 26 Conn. 578. There is nothing in the statute itself or its history tending to show that the term was used in it in a different sense. It must, therefore, be understood in that sense. A person is " traveling upon a bridge," within the meaning of the statute, when he is traveling over that part of the way which is above the abutments and other essential portions of the structure, as well as when he is traveling over the part that spans the stream, valley, or other depression. If he is injured by any " obstruction, defect, insufficiency, or want of repair " there existing, he is injured by an " obstruction, defect, insufficiency, or want of repair of such bridge," and the town is liable, by virtue of the statute, for the damages he suffers by the injury. The location of the particular lines which, in a given case, separate a bridge from the other parts of the highway of which it forms a part obviously depends upon the plan of its construction. Such location will differ as bridges differ in plans of construction. It is the duty of the court to construe the statute and determine what is the mean-

ing of the term "bridge" there used; but it is purely a question of fact whether a particular part of the way is upon the bridge, within the meaning of the term thus defined.

In this case there was evidence from which impartial men might reasonably find that the defect in question was a defect in the bridge, within the true meaning of the term as used in the statute. No question is or can reasonably be made but that the difference in the levels of the planking and the header appertained to the bridge. While this difference was small, it cannot be said that it was not a defect, especially in connection with the depression beyond. Its natural tendency was to produce a jolt, more or less severe according to the character of the wagon and the speed the wagon was drawn. It might reasonably be found from the testimony that the depression beyond the header was over the abutment and over cobble-stone filling required to protect the abutment and complete the bridge structure, and so was upon the bridge. While this depression was not very deep, its natural tendency was also to produce jolts in a passing wagon. It was certainly a defect in the way, and it does not appear probable that reasonable, impartial men would unanimously find that it alone, or in connection with the other defect mentioned, did not render the way unsuitable for the travel over it. The defendants' position, that as the defect was not in the abutment itself or the cobble-stone filling, but in the sand and hardpan surfacing, it was therefore not in the bridge structure, cannot be sustained. The surfacing above the abutment and filling was as much a part of the permanent structure as were the abutment and filling. The fact that the depression arose from the wear of passing travel, instead of from faulty construction, is immaterial. The statute makes no distinction of this kind.

The defendants' motions were all properly denied. No exception was taken to the court's definition of a bridge in his instruction to the jury. It may be said, however, that it appears to have been in accordance with the law.

*Exceptions overruled.*

All concurred.