WILLIAM H. CLARK *v.* HAMPTON.

CLIFFORD R. CLARK, *by his next friend, v.* SAME.

*William H. Sleeper* (by brief and orally), for the plaintiffs.

*George R. Scammon, Ernest L. Guptill, John L. Mitchell* and *Warren, Howe & Wilson* (*Mr. Howe* orally), for the defendant.

PEASLEE, C. J.   These suits are brought to recover for injuries suffered by the plaintiff in interest in the second action in an accident which occurred on or near a highway in Hampton.   For convenience he is herein spoken of as the plaintiff.

The defendant moved for directed verdicts and claims that it could not be found that there was a defective bridge or a dangerous embankment requiring a railing, that if such defects did exist neither was any part of the cause of the accident, and that the plaintiff was not a traveler within the meaning of the statute of highways because the car in which he was riding was not properly registered.

The position that the fault was not in the bridge because it was in the fill between the piling leading to the span, and was a surface defect

only, is not well taken. The case on this point is in all respects comparable with *Wilson* v. *Barnstead*, 74 N. H. 78, and is governed by that decision.

The embankment was five feet high and as steep as dirt would remain. Its top was well within the highway limits and near the customary line of travel. The question whether such an embankment ought to be railed is plainly one of fact. *Seeton* v. *Dunbarton*, 72 N. H. 269; *Parker* v. *New Boston*, 79 N. H. 54.

It is claimed that the circumstance of the condition of the road caused by loose dirt left there by the town authorities cannot be considered upon the issue of duty to rail the embankment. All existing conditions, known to the town, are to be taken into account. *Parker* v. *New Boston*, 79 N. H. 54. In that case the fact that vegetation concealed the existence of an embankment was held to be pertinent to the issue of need for a railing. In the present case, the town knew the loose dirt was there and elected to let it remain. If the condition of the roadbed was only temporary, that fact would also enter into the problem to be solved. It might be reasonable to demand a railing to protect against a permanent condition, but unreasonable to require it if the danger were transient. The distinction can be made because of the difference in the ratio of cost to result. *Hussey* v. *Railroad*, 82 N. H. 236, 242, and cases cited. It might be unreasonable to demand the expenditure of a thousand dollars as a protection against one chance of an accident, but reasonable to require it as a prevention against thousands of chances. This follows from the orthodox rule (*Clark* v. *Barrington*, 41 N. H. 44) that the amount of travel is to be considered in determining whether the way is in proper repair. The danger encountered by a single traveler is the same in either case. But the duty of protection arises only when there is sufficient travel to make it reasonably necessary.

There was sufficient evidence to go to the jury upon the issue of the existence of each of the defects alleged by the plaintiff. This brings us to the next defence — that neither defect was causal.

It could be found that the depression at the bridge gave the car a jolt which threw it sidewise, thereby causing it to run in the soft dirt where its course could not be controlled by the driver, and that because of this it ran down over the embankment and came into collision with a tree. It is true that other inferences could be drawn from the evidence, which would show that the defect was not causal. It is hardly necessary to add that this latter feature of the case is unimportant here.

As to the embankment, it does not conclusively appear that the defect, if one be assumed to exist, had any part in causing the accident. It must be shown that because of the unguarded embankment an accident happened. If the mishap would have occurred if there had been no declivity, the defect was not causal. Upon the evidence as it now stands it could be found that such a situation existed. There was testimony that the car safely negotiated the descent, that its course was not altered thereby, and that after it had reached the lower level in safety, it ran into a tree standing upon privately owned ground. The statute does not require a railing to prevent the traveler from straying from the highway onto other land where he may be injured by existing conditions. If the situation should be found to be that just described, liability could not be predicated upon lack of a railing.

There was, however, other testimony that in going over the embankment the course of the car was changed so that it ran into the tree. This was evidence of causation, sufficient to avoid the conclusion above stated.

It is further urged that no railing that an ordinary man would have erected would have prevented the accident to the plaintiff. It is argued that of necessity the car would have gone through the railing, or would have received an impact of like force to that encountered at the tree beyond. Whether such result would have happened, or whether the glancing nature of the contact would have probably saved serious consequences to the occupants of the car, were questions for the jury. *Pierce* v. *Railroad, ante,* 466; *Kelsea* v. *Stratford,* 80 N. H. 148.

The position is taken that there would have been no accident but for the loose dirt in the highway and that therefore the unrailed embankment was not a cause for which the town was liable. If a railing was reasonably required, there is liability, although the dirt may have been a contributing cause to the accident. The existence of such causes, for which neither party is legally responsible, does not relieve the town. *Miner* v. *Franklin,* 78 N. H. 240; *Hendry* v. *North Hampton,* 72 N. H. 351; *Clark* v. *Barrington,* 41 N. H. 44; *Boynton* v. *Somersworth,* 58 N. H. 321, and cases cited.

The defendant urges also, that in order for a plaintiff to recover because of lack of a railing his deviation from the road must have resulted from the cause which created the necessity for a guard, that if going off the road resulted from another cause the lack of protection is not a fault of which he can complain, that as to him there is no

breach of duty. If it be granted that the legal position thus taken is sound, it does not help the defendant. Conceding that the loose dirt was a cause for the plaintiff's going over the embankment, it was not a cause independent of the duty to erect a railing. If a railing was required for other reasons, much more was it needed when this condition of the roadbed was added to the circumstances to be considered by the town. ". . . duty to guard against a traveler going over an unrailed or insufficiently railed embankment is imposed, and includes the exercise of reasonable foresight as to probable causes for such a fall." *Ahern* v. *Concord*, 82 N. H. 246, 248.

When the car was registered it was owned by Swanton and one Lee. It was registered in Lee's name, as though he were sole owner. It is claimed that this did not comply with the statute, which required registration in the name of the owner, defined owner to mean any person holding title, etc., and provided that person includes all aggregations of individuals who own or control the vehicle. Laws 1921, *c.* 119, *s.* 1.

Because of this defect in registration, it is said that the operation of the car upon the highways was illegal, and that therefore neither the operator nor his passenger can recover under the statute of highways. If it be assumed that this was to be deemed an unregistered car, because of the very specific definitions in the statute (see *Harlow* v. *Sinman*, 241 Mass. 462), the question argued is presented for decision. Authorities are not lacking to sustain the position that an unregistered car is not lawfully in the highway. Statutes couched in more or less similar terms have been given that effect. *McCarthy* v. *Leeds*, 115 Me. 134; *Cobb* v. *Company*, 117 Me. 455; *Hanley* v. *Poultney*, 100 Vt. 172; *Feeley* v. *Melrose*, 205 Mass. 329; *La Junta* v. *Dudley*, 82 Col. 354.

The value of these decisions in Maine, Vermont and Massachusetts, as precedents here, is much weakened because they are based upon a view of the status of violators of the Sunday traveling law which is contrary to that taken here. *McCarthy* v. *Leeds*, 115 Me. 134. In Vermont the ruling is limited to actions under the statute of highways. It does not there apply to actions against third parties for injuries received while traveling upon a highway. *Gilman* v. *Railway*, 93 Vt. 340. And the persuasive value of the Massachusetts cases is further impaired by the holding there that lack of a driver's license does not have any such effect. *Bourne* v. *Whitman*, 209 Mass. 155. In the case last cited there is some criticism of the rule there prevailing as to unregistered cars. It seems to us that the Massachusetts cases put the

whole subject in an illogical and unreasonable situation. Except in very unusual circumstances the inanimate car is incapable of doing harm. Accidents happen because of the way in which the driver causes the car to move. It is the act of the sentient operator, and not the mechanical response of the operated car, which constitutes the danger to be guarded against.

In other jurisdictions it has been held that the registration statute does not deprive the operator of the unregistered car of rights to recover under a statute of highways for injuries received. *Spencer* v. *Phillips,* 219 Mich. 353; *Jones* v. *Brookfield,* 221 Mich. 235; *Hersman* v. *Roane County Court,* 86 W. Va. 96; *Hemming* v. *New Haven,* 82 Conn. 661; *Wolford* v. *Grinnell,* 179 Ia. 689.

The question is one of legislative intent. *Johnson* v. *Railroad, ante,* 350. Was the purpose of the provision merely for the better enforcement of the revenue provisions of the act and to facilitate identification, or was it intended to have a broader application, denying to the violator the status of a highway traveler? Many of the provisions which were thought to be persuasive upon a similar issue as to an unlicensed driver (*Johnson* v. *Railroad, supra*) are lacking here. The prohibitory provision as to the use of the car is found only in the revenue portion of the act (Laws 1921, *c.* 119, *s.* 2), while that as to the operator is repeated in a section devoted to rights and duties upon the highways. *Ib., s.* 8. The other provisions as to the operator, relating to who may be licensed and to an examination as to fitness before license may be granted (*Ib., s.* 7) and to those learning to operate (*Ib., s.* 8), were considered to be material upon the issue of legislative intent. None of them apply to the car.

It is true that the requirement for displaying registration number plates (*Ib., s.* 5) may be considered to be promotive of the safety of travel, because knowledge that he is easily identified may have a deterrent effect upon one otherwise indifferent to the rights of others. But this is only a remote consequence of a provision the main purpose of which seems to have been to ensure payment of the registration fee. It is not fairly comparable with the numerous provisions relating to the operator, many of which are concerned solely with the safety of travel. An added bit of evidence, tending to show an intent to deal differently with the two subjects, is seen in the term license as to the driver, whereas the car is to be registered.

Because of these differences it appears to be probable that the prohibition of the operation of an unregistered car and the penalty for a violation thereof (*Ib., ss.* 15, 16, 17) were designed to make the

registration provisions efficient, but were not intended to affect the rights of the operator in other respects.

Except for the element of identification, it is not perceived how a denial to drivers of unregistered cars of the right to use the highways would tend to promote the safety of travel. There are evident and practical reasons, promotive of the public safety, for keeping unlicensed drivers off the road, which do not apply to the inanimate vehicle. In view of these considerations, our conclusion is that the legislative intent to make lack of license material in civil suits, which was held to exist as to the operator, does not extend to a failure to properly register the vehicle operated. The exception to the denial of the motion for directed verdicts is overruled.

The plaintiff and Swanton had obtained employment in the apple harvest, and had established a camp in which they lived. This was some distance from their work and they used the car to go back and forth. The accident happened upon one of these trips. Swanton was a licensed operator and drove the car.

Upon the issue of joint control appropriate instructions were requested. These were refused, and the jury were told that the plaintiff was not chargeable with the negligence of the driver, Swanton. The car had been owned by Swanton and Lee. The plaintiff denied having acquired any title to the car or control thereof. But Lee testified to a contract for purchase of his share, as a result of which he turned over possession and control of his interest to the plaintiff and one Erricson. If this evidence was accepted as true, it showed a situation where, for purposes of present use and control, the plaintiff stood in the position of a part owner in common with Swanton. In this situation the plaintiff and Swanton proceeded to use the car for their mutual benefit. This would plainly amount to such a joint control that each party would be the agent of the other in the conduct of their common undertaking. *Bowley* v. *Duca*, 80 N. H. 548; *Beaucage* v. *Mercer*, 206 Mass. 492; *Adams* v. *Swift*, 172 Mass. 521; *Lucey* v. *Company*, 45 R. I. 103; *Seiden* v. *Reimer*, 190 App. Div. 713, affirmed in 232 N. Y. 593; *Van Horn* v. *Simpson*, 35 S. D. 640; *Goodman* v. *Wilson*, 129 Tenn. 464; *Farthing* v. *Hepinstall*, 243 Mich. 380.

"What sort of an arrangement will make the parties to it joint adventurers in the operation of the vehicle in which all are riding, is well settled. The typical case is where two or more jointly hire a vehicle for their common purpose and agree that one of their number shall drive it. In such a case the possession of the vehicle is joint and

each has an equal right to control its operation. The better considered cases hold that such common possession, and common right of control, resulting in common responsibility for negligent failure to control, are the ear-marks of the legal relation of a joint adventure in the operation of the vehicle." *Coleman* v. *Bent*, 100 Conn. 527, 530. This rule certainly is not the less applicable where the right of control, vested in the respective parties, is more extensive than in the case of those who hire for a single occasion. No case has been cited or found holding that common owners, using the car for a common purpose, both being present, are not responsible each for the other as to the operation of the car.

If the sole owner of a car engages another to drive the owner about, he is liable for the driver's negligence. If two common owners make a like arrangement they are likewise liable. No reason appears for applying a different rule when one common owner makes a similar arrangement for the other owner to drive for both.

Swanton's testimony that the plaintiff had nothing to say about the running of the car but was riding as Swanton's guest, is coupled with the statement that the plaintiff had no interest in or title to the car. It has no tendency to show an arrangement between them, whereby full power to operate the car at will was conferred upon Swanton by agreement between those having a common right of control. If it be assumed (contrary to the statement in *Coleman* v. *Bent, supra*) that such an arrangement would release the plaintiff from responsibility for the driver's acts, it does not alter the legal situation of the parties here, for there is nothing in the evidence upon which to base a finding that such was the situation. The evidence does not admit of the application of the theory elaborated in *McCarthy* v. *Souther, ante*, 29, 36, *et seq.*

As there was evidence that the driver was negligent, the issue of joint control and consequent responsibility for such negligence should have been submitted to the jury. It follows that the verdicts must be set aside.

*New trial.*

All concurred.