Rockingham,
Feb. 7, 1933.

LILLIAN SALOSHIN, *Adm'x, v.* ZOEL A. HOULE.

*William H. Sleeper* and *John W. Perkins* (*Mr. Sleeper* orally), for the plaintiff.

*Sewall & Waldron* (*Mr. Sewall* orally), for the defendant.

BRANCH, J.   The plaintiff at the trial advanced five claims of negligence: 1. That the railings of the bridge were "defective and insufficient." 2. That the dirt fill was negligently maintained in a dangerous condition by reason of depressions therein. 3. That the defendant negligently failed to apply sand to the approaches and the planking of the bridge. 4. That the defendant negligently failed to maintain a watchman to direct traffic over the bridge. 5. That no sufficient warning signs were maintained.

The trial court specifically withdrew from the consideration of the jury by the charge, the claims of the plaintiff with reference to the condition of the dirt approach, the lack of a watchman and the absence of warning signs. No reference was made to the plaintiff's claim that by reason of its slippery condition the road should have been sanded at the time of the accident, and the case was submitted to the jury solely upon "the issue as to the reasonable sufficiency of the bridge and railing."

The court properly withdrew from the jury the issue in regard to warning signs. The only conclusion which could rationally be drawn from the evidence was that proper signs were in place at the time of the accident.

The record does not indicate the ground upon which the court withdrew from the jury the issue as to the condition of the dirt approach. There was testimony from a witness who went over the road every day of a depression in the fill, so that "when you went up onto the bridge . . . there was little bit of a rise" and the reason suggested was that the dirt which was placed over the planks at the end of the bridge was displaced by continued use "so that it had to be replaced from time to time." Saloshin's fellow passenger testified that as they approached the bridge the road was "bumpy"; that when the driver "made that turn" there came a "bump up"; that the driver then put on his brakes and "the car started to slide." From this testimony it might be found that the depression in the road was the cause of the "bump up" and that this shock started the skidding of the car either directly or by leading the driver to make a sudden application of the brakes. In this state of the proof, the issue as to the negligence of the defendant in maintaining the dirt approach in its then condition should have been submitted to the jury.

As before stated, the plaintiff's claim that the roadway should have been sanded because of its slippery condition at the time of the accident was not specifically mentioned by the presiding justice in the charge, but from the language used, the jury must have understood that all issues except that "as to the reasonable sufficiency of the bridge and railing" were withdrawn from their consideration. The evidence tended to prove that there was a supply of sand available in the defendant's storehouse located very near the scene of the accident, and the slippery condition of the road at the turn was amply demonstrated. The danger that cars might go off the road at this point had been brought home to the defendant by a previous accident in which another car went through the railing of the bridge, and the close proximity of water made it evident that the consequences of such an occurrence were likely to be serious. Under these circumstances the plaintiff was entitled to have the jury determine whether due care required the sanding of the road at the time and place of the accident.

With reference to the plaintiff's claim of negligence in failing to provide for a watchman at the entrance to the bridge, the defendant stated his position on the stand as follows: "Well, I always thought and I still think that my duty was to have care of the approach of roads, fences and any obstructions on the detours that we were responsible for, but not regulating traffic." The idea here suggested that the duty of directing traffic around dangers created by the contractor rested with the public authorities, is not borne out by the language of the contract. No such division of responsibility is therein contemplated. On the contrary it is provided that the contractor shall "provide a sufficient number of watchmen and take all necessary precautions for the protection of the work and safety of the public," and further that the contractor shall indemnify "the State, the Department, the town and all other officers, agents and employees from all . . . actions or claims . . . brought for or on account of any injuries . . . received or sustained . . . in consequence of any neglect in safeguarding the work." It is, therefore, plain that there was nothing in the defendant's contract with the state which had the effect of reducing the extent of his legal obligation to use reasonable care for the protection of travelers against dangers incident to his construction operations. Whether the danger to travelers at the point of accident was so great under the circumstances then existing that a watchman should have been stationed there to give additional warning or to moderate the speed of motor vehicles was a question for the jury.

It might perhaps be suggested that since the approach to a bridge is here regarded as a part of the bridge for the purpose of determining the liability of towns for injuries to highway travelers under the statute (*Wilson* v. *Barnstead*, 74 N. H. 78; *Clark* v. *Hampton*, 83 N. H. 524; P. L., c. 89, s. 1) the issue submitted to the jury "as to the reasonable sufficiency of the bridge and railing" technically included all questions as to the condition of the dirt approach and the unsanded condition of the roadway. The answer is that there is no likelihood that a jury of laymen would have understood the charge in this way, and "where there seems a strong probability that a charge may have been understood to state an erroneous rule, 'and that therefore there may have been a mistrial', the verdict is set aside." *West* v. *Railroad*, 81 N. H. 522, 531.

In view of the conclusions reached above, the plaintiff's remaining exception does not require consideration.

*New trial.*

All concurred.