Merrimack
No. 7984

## Fred L. Bancroft

v.

## Town of Canterbury

June 19, 1978

*Flynn, McGuirk & Blanchard*, of Portsmouth (*Stephen L. Tober* orally), for the plaintiff.

*Devine, Millimet, Stahl & Branch P.A.*, of Manchester (*William S. Gannon* orally), for the defendant.

BOIS, J.  The issue in this case is whether the plaintiff may maintain a tort action for injuries he allegedly sustained on an approach to a discontinued bridge linking the towns of Boscawen and Canterbury. The defendant town of Canterbury moved to dismiss, asserting that the plaintiff failed to comply with the notice requirements of RSA ch. 247 and that the defendant was immunized from liability by RSA 238:6. (Defendant also asserted a third ground for dismissal, but has since waived it.) The Trial Court (*Keller*, C.J.) denied the motion. Defendant's exception to this denial was reserved and transferred to this court, in advance of trial, by *Brock*, J. We affirm.

We adopt the plaintiff's factual allegations for purposes of reviewing the motion to dismiss. On the evening of May 8, 1970, plaintiff was operating his motorcycle along Intervale Road in Canterbury when he approached the Boscawen-Canterbury bridge. Unknown to the plaintiff, Canterbury had closed the bridge to motor vehicles by placing a steel I-beam across the bridge's entrance. The town had also placed or allowed to accumulate a quantity of sand at the bridge's entrance. The sun had already set that night and there were no signs or reflectors warning that the bridge was closed, so plaintiff had no way of knowing that he should not attempt to cross the bridge. His motorcycle hit the unmarked sand, causing him to be thrown head-first against the I-beam. Plaintiff thereafter brought this suit to recover damages for his resulting injuries.

The defendant's first contention in this appeal is that the plaintiff's action should be dismissed as untimely because it was not commenced until April 19, 1974, almost four years after the date of the alleged accident. The defendant in so arguing assumes that the plaintiff's action is predicated on RSA ch. 247 ("Neglect by Town to Repair Highways and Liability for Damages"). Section 17 of RSA ch. 247 provides that "[t]owns are liable for damages happening to any person, . . . or [his] motor vehicle, traveling upon a bridge . . . by reason of any obstruction, defect, insufficiency, or want of repair of such bridge . . . which renders it unsuitable for the travel thereon." (The approach to a bridge may be regarded as a part of the bridge for the purpose of determining the liability of towns for injuries to highway travelers under RSA 247:17. *Saloshin v. Houle*, 86 N.H. 132,

164 A. 767 (1933).) The municipal liability imposed by the statute is qualified, however, by the requirement that a claimant

> shall, within ten days from the date of receiving injury, file with one of the selectmen and the clerk of such town a written statement, under oath, setting forth the exact place where and the time when the injury was received, a full description thereof, the extent of the same and the amount of damages claimed therefor.

RSA 247:25. Any person "unavoidably prevented from filing such statement" within the ten-day period may petition the superior court for leave to file a late claim. RSA 247:26. However, such petition must be filed with the superior court within six months of the date of the alleged injury, and if the petition is granted the claimant must file his late claim within the time period set by the court. *Id.*; *Simoneau v. Town of Enfield*, 112 N.H. 242, 293 A.2d 317 (1972). If a claimant fails to comply with these procedural preconditions, his suit usually must be dismissed. *Id.*; RSA 247:28.

Plaintiff concedes that he did not file a claim under RSA 247:25–28. He asserts, however, that the statutory scheme of RSA ch. 247 is irrelevant to this case because the statute does not apply to actions for damages arising out of injuries allegedly sustained on *discontinued* bridges. The superior court agreed, ruling that "[i]n view of the fact that the portion of the bridge with the approach thereto, where the accident allegedly happened, had been discontinued as a public highway, RSA 247:17, and related statutory provisions, are not applicable." This ruling was correct.

■ RSA 247:17, and ch. 247 in general, applies only to *open* bridges and highways; nothing in any of our cases has implied that the statute is at all relevant to discontinued bridges. RSA 247:17 makes municipalities liable for personal or property damage sustained by a person "traveling upon a bridge" if a defect or condition renders the bridge *"unsuitable for* the *travel* thereon." (Emphasis added.) *See Merrill v. City of Manchester*, 114 N.H. 722, 727, 332 A.2d 378, 382 (1974). Similarly, RSA 247:1 subjects a town to liability if it neglects to "keep any such highway in good repair *suitable for* the *travel* theron. . . ." (Emphasis added.) The parties have stipulated that the plaintiff incurred his alleged injuries on an approach to a "discontinued" bridge, one *closed* to motor vehicles. *See* RSA 230:1 ("highways" include the bridges thereon); RSA chs. 237, 238 (highways may be discontinued). We hold that the notice requirements of RSA 247:25–28, and RSA ch. 247 in general, are

irrelevant to a civil action, such as the present one, alleging that injuries were sustained as a result of a town's tortious construction and/or maintenance of a barrier to a *discontinued* highway or bridge.

■ ■     The present action is not barred by any doctrine that immunizes municipalities from tort liability. In *Merrill v. City of Manchester*, 114 N.H. 722, 332 A.2d 378 (1974), this court abolished the judicially-fashioned defense of municipal immunity. However, *Merrill's* holding was prospective only; it was to apply only to torts occurring on or after July 1, 1975. Thus, as a general proposition municipalities were immune from tort liability at the time of Canterbury's alleged tort in the case at bar. Nevertheless, the general rule of immunity had exceptions. One such exception was RSA 412:3 (amended July 1, 1975) [hereinafter RSA 412:3], which permitted towns to purchase insurance coverage against certain types of risks. The statute went on to provide that:

> In any action against the state or any municipal subdivision thereof to enforce liability on account of a risk so insured against, the insuring company or state or municipal subdivision thereof, shall not be allowed to plead as a defense immunity from liability for damages resulting from the performance of governmental functions, and its liability shall be determined as in the case of a private corporation. Provided, however, that liability in any such case shall not exceed the limits of coverage specified in the policy of insurance, and the court shall abate any verdict in any such action to the extent that it exceeds such policy limit.

We affirm the trial court's ruling that Canterbury "is precluded by virtue of RSA 412:3 from pleading governmental immunity. . . ." To the extent that Canterbury is insured against the losses the plaintiff alleges he did in fact suffer, Canterbury may be held liable as if it were a private corporation.

The defendant asserts that RSA 412:3 was intended to waive only the general defense of municipal tort immunity, and that the legislature in enacting RSA 412:3 did not intend to supersede RSA 238:6, a statutorily imposed tort immunity. RSA 238:6, which was enacted before RSA 412:3, provides that "[t]owns shall be relieved of all obligation to maintain, and all liability for damages incurred in the use of, discontinued highways or highways discontinued as open highways and made subject to gates and bars." As the lower court ruled, however, the immunity of RSA 238:6 is unavailable as a defense in the present case.

■ First of all, the legislators seemingly *did* intend that RSA 412:3 modify the tort immunity of RSA 238:6. RSA 412:3, at least as it read at the time of the occurrence alleged in the instant case, did not limit, in any way relevant here, the types of risks against which a municipality may procure insurance. It did not specify that a municipality may insure against bodily injuries *except* those involving discontinued bridges. Instead, RSA 412:3 provided that a municipality may insure against certain risks; that if it obtained insurance, the town "shall not be allowed to plead as a defense immunity from liability for damages resulting from the performance of governmental functions"; and that the town's liability "shall be determined as in the case of a private corporation." We believe that the legislature in enacting RSA 412:3 intended to modify not only judicially imposed municipal immunity but also such statutes as RSA 238:6, which relieve municipalities from certain liabilities that might otherwise accrue were the municipalities to be treated as private corporations.

A second reason that RSA 238:6 does not bar this suit is that the statute appears not intended to apply to such civil proceedings as the one before us. The present action does not seek to enforce a town's "obligation to maintain" a discontinued highway or to recover "damages incurred in the use of" such a highway. Rather, the plaintiff here complains of the allegedly tortious construction and/or maintenance of a pile of sand and a steel barrier at the foot of the Boscawen-Canterbury bridge.

■ We do not believe that RSA 238:6 was intended to be a license for towns to construct and/or maintain barriers to discontinued bridges in a manner that invites peril. No evidence of the legislative purpose underlying the statute has been presented to us. Thus, there is no direct support for our interpreting the statute to apply only to the situation in which someone travels over a closed-off bridge, is injured while so using the bridge, and then brings an action seeking damages. Nonetheless, the language of a statute itself supplies a key to the legislative purpose. *See Auclair Transp., Inc. v. Ross Express, Inc.*, 117 N.H. 630, 634, 376 A.2d 146, 148 (1977). We read the language of RSA 238:6 as bolstering our interpretation. Also relevant is the New Hampshire Senate debate of senate bill 309 (enacted as Laws 1969, ch. 332), which was intended to "[make] it possible for planning boards to have jurisdiction over discontinued highways subject to gates and bars." N.H.S. Jour. 892 (1969). In passing this bill, the senate indicated that it understood that a town vote to discontinue open highways "essentially meant if the public

458

wanted to travel over these, they would have to do so at their own risk because in another part of the statutes [,presumably, RSA 238:6], the towns were released from responsibility." *Id.* at 893. Therefore we hold RSA 238:6 applicable only to actions for damages sustained in the crossing of a discontinued highway or bridge (or a highway or bridge discontinued as an open highway or bridge and made subject to gates and bars); it does not prohibit an action to recover damages sustained because of allegedly tortious municipal conduct in constructing and/or maintaining a barrier to a discontinued bridge.

All we hold today is that the defendant's motion to dismiss was properly denied in light of the law in force at the time of the plaintiff's alleged accident. The above discussion obviates any need to reach the plaintiff's other arguments. We remand for further proceedings consistent with this opinion.

*Exceptions overruled; remanded.*

All concurred.